LAMAR BATH HOUSE COMPANY *v.* CITY OF HOT SPRINGS.

5-1536                                   315 S. W. 2d 884

Opinion delivered June 16, 1958.

[Rehearing denied September 29, 1958.]

*House, Holmes, Roddy, Butler & Jewell,* for appellant.

*A. D. Shelton, City Attorney,* and *Wood, Chestnutt and Smith,* for appellee.

J. Seaborn Holt, Associate Justice. In 1934 the City of Hot Springs entered into an agreement with the National Park Service, Department of Interior, relative to the construction of a city sewer system and sewage plant in Hot Springs. The parties recognizing that Hot Springs' reservation, including appellant's bath

houses located thereon, contributed largely to the city's sewage, the Park Service agreed to pay 22.5 per cent of the construction cost and an additional 5 per cent in lieu of maintenance and operation charges. Park Service in the aggregate contributed $82,000. Appellants' bath houses furnished no part of the consideration. The agreement contained this recital: "1. That the Government be not charged for any service or use of the system at any time in the future. 2. That the cost of all repairs, alterations, maintenance and operation of the system be borne by other than the United States g o v e r n m e n t sources. Necessary replacements of the entire plant due to natural or human destruction not to be considered a part of paragraph 2." The balance of the cost of construction was paid partly by the U. S. Public Works Administration and partly by a city bond issue of $175,000, financed by a 1.5 mill ad valorem tax on the property within the city. In 1934 the 1.5 mill tax was extended against appellants' property and assessed for taxation. In July 1935 appellants obtained a temporary restraining order against the collection of this tax, setting up the agreement as a defense. Thereafter, in 1945, on the city's motion to dissolve the injunction and for a decree for past due taxes, the court held, in effect, that appellants were U. S. government sources within the meaning of the agreement and enjoined the city from assessing and collecting the 1.5 mill tax against them. There was no appeal from this decree.

The record reflects that by 1952, the city sewage disposal plants were obsolescent, inadequate and heavily overloaded, creating a serious health problem, and the pollution of Lakes Hamilton and Catherine. A thorough engineering study was made resulting in recommendations to the city to enlarge, overhaul and repair the disposal system and to change the method of purifying the city sewage. Following this recommendation and to cover the cost and properly proceeding under the provisions of Act 132 of 1933 (Sec. 19-4101 etc. Ark. Stats. 1947), the city caused bonds to be issued in the amount of $786,000, which were to be financed by a

sewer service charge. It appears that prior to this time the city had never levied any sewer service charge. Sewer service charge rates were set forth in Ordinance 2444 by the city. Following the completion of the work, sewer service charges were made against and sent to appellants and other users of the system. Charges to appellants were calculated upon the total volume of sewage discharged by them from their bath houses into the sewer system, and included both the city water and also the hot mineral water furnished by the National Park Service. Appellants operate commercial bath house companies located on the U. S. reservation and are large consumers of water, and large contributors to the water that goes through the sewage system. There was evidence that in 1952 appellants discharged 57,365,500 gallons of sewage into the system, or about 7.5 percent of the total flow. In 1953 the total number of gallons discharged was 55,705,800, or 7.5 percent of the total flow. Appellants refused to pay to the city any sewer service charges and in 1955 brought the present suit to enjoin collection. In the trial court, and here on appeal, appellants relied on the following points: "1. The agreement is valid, and imposition of sewer charges upon appellants is an unconstitutional impairment of contract. 2. The validity of the agreement is *res judicata*. 3. Appellees are estopped to assert any invalidity in the agreement and from imposing sewer charges upon appellants. 4. The city had no legislative or territorial jurisdiction to impose sewer charges upon appellants, and the trial court had no jurisdiction to render judgment against them. 5. No claim or judgment *in personam* could lawfully be made or rendered against appellants. 6. In no event could any charge be calculated against appellants on volume of hot mineral water from the National Park springs."

Appellees defended primarily on the ground that their agreement or contract relied upon by appellants was *ultra vires* as applied to the sewer service charge, asserted their right to collect these service charges from appellants and in a cross complaint asked for a judgment

for the full amount of the unpaid sewer service charges not only for the city water but also for the hot mineral water furnished by the National Park Service which, as indicated, was also discharged through the sewer system. Upon a hearing the trial court held that the contract or agreement of 1934 was valid as to the 1.5 mill ad valorem tax for the original construction, but *ultra vires* as applied to the present sewer service charges, and that appellants were liable only for the amount of city water discharged into the sewers and not for the hot mineral water. The court also disallowed the city's claim for penalties and attorney's fees. It appears that all bonds for the original construction under the 1.5 mill tax are paid and this tax is no longer levied. The case is before us on appellants' direct appeal and a cross appeal of appellees.

The primary, if not the decisive, question presented is whether the above agreement between the city and the National Park Service is *ultra vires* in the circumstances here. We hold that it was in so far as it would estop or deny the City of Hot Springs the right and power now or at any future time, in the exercise of its police powers to enforce collection of sewer charges against appellants. The city not only has the right in exercising its legislative and governmental functions to protect the health, safety and general welfare of its people, but it is its duty to do so and may not contract away any such right. ''A municipality cannot bind itself by a perpetual contract, or by one which lasts an unreasonable length of time . . . It is declared to be against public policy to permit a municipal corporation to part with any of its legislative power. In the absence of a clear grant of power from the legislature, the municipal authorities can do nothing which amounts in effect to the alienation of a substantial right of the public. It cannot obligate itself not to exercise such powers, and a contract in which it purports to do so, even upon valuable consideration, is void. Thus, a municipal corporation cannot, by contract or otherwise, divest itself of its general police power, or of the power

of eminent domain which has been delegated to it by the legislature, or of the power of taxation," *Risser* v. *City of Little Rock,* 225 Ark. 318, 281 S. W. 2d 949.

In effect, the same issues as here were presented to the Supreme Court of Ohio in *State ex rel. Gordon* v. *Taylor, et al.,* 149 Ohio St. 427, 79 N. E. 2d 127. In that case Ohio State University refused to pay a bill for sewer service charges presented by the City of Columbus on the ground that it had many years before entered into an agreement with the city under the terms of which it had conveyed to the city an easement across University property for sewer purposes in consideration of ''the right and privilege to the Board of Trustees, and to the Ohio State University, to use the city sewers on the campus of said university without cost or expense to said university, or its Board of Trustees.'' In rejecting the university's defense, that court used this language: ''The language of the grant of easement involved herein, if construed as contended by counsel for the respondents, would be so broad and comprehensive as to vest in the university the right to use the city sewer and the benefit of the city's sewerage system without restriction or limitation, and without liability for any future charge or expense of maintenance, renewal or additional facilities required by any change of conditions . . . If the University is completely exempted from any charge therefor and is privileged, without any limitation or restriction, to empty into the city sewers all the sewage from the campus, the boundaries of which are not defined or limited and may be indefinitely extended, such exemption could be held valid only if the city, notwithstanding its duty and obligation to protect the health, safety and welfare of the citizens of Columbus, is authorized to relinquish as to the university property the powers and prerogatives vested in the municipality and to contract away its duty and obligation to require all users of the city sewerage system to pay proportionately the cost and expense of an essential municipal function.

In the construction of a sewerage system, a municipality acts in a governmental capacity, and, hence, in accepting the grant of easement subject to the right of the university to use the sewer would be *ultra vires,* if by such exemption the city bargained away all its duties and obligations with reference to maintenance of such sewer and agreed to forever maintain it for the benefit of the university. It is only in the maintenance of a sewerage system that the city acts in a ministerial or proprietary function. *City of Portsmouth* v. *Mitchell Mfg. Co.,* 113 Ohio St. 250, 148 N. E. 846, 43 A. L. R. 961.'' *(State* v. *Taylor, 79* N. E. 2d 127 *supra.)*

''The supervision and regulation of the sewers is a police function of the city. Therefore, in granting permission for the use of the sewers in the first instance and for the continuing use thereof, the city must at all times retain control, and any attempt by way of contract to deprive the city of that control is void. The police power of the city cannot be bargained away by contract, but must at all times be available for use to meet such public needs as may arise. McQuillin, Municipal Corporations, 2d Ed. Rev. Secs. 393, 1564,'' *Ericksen* v. *City of Sioux Falls,* 70 S. D. 40, 14 N. W. 2d 89. ''. . . an indefinite exemption, the purpose or amount of which is not reasonably ascertainable, is not only *ultra vires,* but is also against public policy,'' *City of Cleveland* v. *Edwards,* 109 Ohio St. 598, 143 N. E. 181, 37 A.L.R. 1352. '' . . . in the absence of express grant of power, a municipal corporation has no authority to make contracts for the exemption or commutation of local assessments,'' McQuillin, 3d Ed. 14, Sec. 38.86. Cases from Delaware, Indiana, Kentucky, Massachusetts, Mississippi, Missouri. New York, Wisconsin and Ohio are cited to support the text.

Appellants have presented for our consideration a large number of cases in their effort to uphold the validity of the above agreement between the city and the National Park Service, however, upon examination of each of these cases there appears to have been statu-

tory or constitutional authority which permitted the municipality to enter into the contract in question. As pointed out above, in the present case we find no authority or express grant of power, statutory or otherwise, giving to the City of Hot Springs the authority to exempt appellants here from the sewer service charge in question. "A common council 'cannot bargain away or divest itself of the right to make reasonable laws, and to exercise the police power whenever it becomes necessary to conserve or promote the health, safety or welfare of the community.' So, power conferred upon a city to contract respecting a particular matter does not confer power, by implication, so to contract with reference thereto as to embarrass and interfere with its future control over the matter, as the public interests may require. Hence, all contracts which interfere with the legislative or governmental functions of the municipality are absolutely void." McQuillin, 3d Ed. Vol. 10, Sec. 29.07.

It appears practically undisputed here that when this bond issue of $786,000 was made that the City of Hot Springs was faced with a serious problem of sewage disposal, affecting the health and well being of its inhabitants, and we see no valid reason, and appellants have pointed to none, why appellants who are citizens and conducting their businesses in that municipality should not pay their just share, through sewer service charges, of this necessary improvement for the public good.

Appellants' contention that "the validity of the agreement is *res judicata*" cannot be sustained. As we have heretofore stated, "the police power of a city must at all times be available for use to meet such public needs as may arise." It does not appear from the record that any such need existed in 1935 when a temporary restraining order was obtained or in 1945 when it was made permanent. Consequently, at those times, there was no occasion for the city to exercise its police powers. On the other hand it appears now that such a need

does exist and consequently there is an occasion for the city to exercise its police powers.

On the contention of appellants that the city is estopped, little need be said in addition to what we have set out above.

Since we are holding that the contract or agreement here in question is *ultra vires,* then the city may not be estopped to deny its invalidity. ". . . contracts which the corporation is not permitted legally to enter into are not subject of ratification, and a city may not be estopped to deny the invalidity of a contract that is *ultra vires* in the sense that it is not within the power of the municipality to make," McQuillin, 3d Ed. Vol. 10, Sec. 29-104, p. 422.

On cross appeal appellees contend that there was error in the trial court's decree in denying them the right to base sewer service charges on the total volume of all water which appellants discharged into the sewers, which included both the city water and the hot mineral water. We agree that this contention should be sustained. It appears that the basis of the sewer service charge is based on the volume of sewage discharged into and through the sewers. The record reflects that the water consumption for the calendar year 1952 was used as a basis for sewer charges for period from October 1953 through September 1954. This water, which was emptied into the sewers, amounted to approximately 4,452,800 gallons of city water and 52,912,700 gallons of hot mineral water. For 1953 the volume of city water was slightly greater and that of the hot mineral water somewhat less. As indicated, sewer service charges are based on the use of the system. Appellants used the water in their businesses in which, obviously, they seek to make a profit, and we can see no just reason why they should not be required to share, along with all other users of sewers, the cost burden of disposing of this water through the sewer system.

We hold that there was no error in denying to appellees the penalties and attorney's fees as provided in

Sec. 19-4113 Ark. Stats. 1947. This statute is penal in its nature and must, therefore, be strictly construed. It provides in part: "If any service rate or charge so established shall not be paid within thirty days after the same is due, the amount thereof, together with a penalty of ten per cent, and a reasonable attorney's fee, may be recovered by the sewer Committee. . ." This provision says that penalties "may be recovered" not that they must be. The trial court is thus granted a reasonable discretion in denying or allowing penalties depending on the facts and circumstances. "It is a general rule of statutory construction that penal statutes are to be strictly construed. Statutes imposing penalties are subject to this rule of strict construction. They will not be construed to include anything beyond their letter, even though within their spirit. The rule that penal laws are to be construed strictly is perhaps not much younger than construction itself. It is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department." 23 Am. Jur., Forfeitures and Penalties, Sec. 37, p. 631. We find no abuse of that discretion here.

Accordingly, the decree is affirmed on direct appeal, on appellees' cross appeal the decree is reversed and remanded with directions to enter a decree consistent with this opinion.

McFADDIN, J., dissents.