GOODWIN v. STATE.

5-2742                                    360 S. W. 2d 490

Opinion delivered October 1, 1962.

*C. Floyd Huff, Lookadoo, Gooch & Lookadoo, Daily & Woods, Shaver, Tackett & Jones,* for appellant.

*David B. Whittington, Wood, Chesnutt & Smith,* for appellee.

PAUL WARD, Associate Justice. This litigation was initiated to invalidate certain transactions negotiated by H. C. Warren as County Judge of Garland County during the year 1959. In these transactions Warren, acting in the capacity of County Judge, bought numerous expensive pieces of used road building equipment from Paul G. Goodwin on divers occasions, each time delivering to him used county equipment as a down payment. On these occasions Warren executed a purchase contract together with a written note or agreement, bearing interest, for the balance due. These notes or agreements were to be paid in equal installments—some due in 1959 and the others due the following year. These installment notes were then transferred or sold by Goodwin to different banks. Some of the installment payments had been made to the banks by the county.

This suit was filed in the chancery court by the prosecuting attorney and five members of the grand jury (all citizens and taxpayers of Garland County) against Goodwin and the said banks. The plaintiffs, gen-

erally speaking, sought to have the contracts (sales, purchases, notes) rescinded and declared null and void; to have Goodwin and the banks repay the county any money they had received; to have returned to the county any equipment (or the value thereof) turned over to Goodwin; to be reimbursed for all damages and depreciation to equipment sold to Goodwin; to enjoin the present county judge (Warren having gone out of office in February of 1960) from approving any claims based on the installment payments due or to become due; and, to impound for the benefit of the county the equipment purchased from Goodwin. The complaint sets out in detail the above mentioned transactions, identifying by code or name each piece of equipment bought or transferred by Warren (as county judge), but a brief summary, set out below, will suffice for all purposes of this opinion.

(a) On January 12, 1959 contract to buy equipment for $29,500; $6,000 paid by county; balance (including $2,115 interest) $25,615, payable in four equal installments of $6,403.75, due July 1, 1959—November 15, 1959 —July 15, 1960—November 15, 1960. This contract was endorsed by Goodwin and transferred to the Bank of Amity on a date and for a consideration unknown to plaintiffs. It is alleged that Goodwin bought the equipment for $17,000 and then sold it to the county for $29,-500. The county has already paid the bank the first two installments or a total of $12,807.50 and the same amount is payable in 1960. The $6,000 down payment represented a trade-in of equipment belonging to the county.

(b) On April 15, 1959 Warren purchased equipment from Goodwin for $21,000; down payment $3,500 (represented by county equipment delivered to Goodwin ); balance due by county (including $1,575 interest), $19,075; payable $2,500 May 15, 1959, and three payments of $5,525 each due April 15, 1960, October 15, 1960, and December 15, 1960. Prior to May 15, 1959 Goodwin endorsed the contract to the First National Bank of Fort Smith—consideration unknown. The county has made the first payment to the bank.

(c) On February 15, 1959 there was a similar transaction between Warren and Goodwin. Equipment was purchased for $31,000 with a down payment of $1,500 (representing county equipment trade-in); the balance (including $2,920.25 interest), $32,420.52 payable in four equal installments, two due in 1959 and two in 1960. The contract was transferred by Goodwin to Elk Horn Bank & Trust Co. of Arkadelphia. The first installment has been paid to the bank by the county. On March 4, 1960 the bank filed a claim for the second payment but it has not been approved by the county judge. Plaintiffs allege that Goodwin purchased the equipment for $19,500 and sold it to the county for $31,000.

(d) Similarly, on January 1, 1959 Warren purchased from Goodwin equipment for $7,600 payable (with $376.20 interest) in three equal installments due in March, August and November of 1959. This contract was assigned to the Bank of Amity. The county made the first payment of $2,658.73 to Goodwin. The other two payments were made to the bank.

(e) On December 11, 1959 Warren executed a contract with Goodwin for the purchase of equipment, consideration being $9,800 with a down payment of $3,000 (representing county equipment trade-in). The balance (including $367.21 interest) of $7,167.21 payable $1,389.07 on June 15, 1960, and $2,389.07 in September and November, 1960. This contract was assigned to. the Bank of Amity, and no claim for payment has been filed with the county.

After the issues were fully developed and presented by able counsel on both sides the chancellor made numerous findings in favor of appellees. These findings will be discussed separately under the five points urged by appellants for a reversal.

1. It is first contended by appellants that the plaintiffs, being the prosecuting attorney for Garland County and members of the grand jury of that county, were not proper parties, and, therefore, had no standing in court to maintain this action. In support of their contention,

appellants point out that the grand jury was in session when this suit was filed, and that all the plaintiffs (except the prosecuting attorney whose duty it was to advise the grand jury) were members of the grand jury, although they were qualified electors and taxpayers. Attention is also called to Sections 43-927 to 43-931, Ark. Stats. which, among other things, require members of the grand jury not to make public what they say or how they vote, and not to disclose evidence given them as jurors. In *Collins* v. *State,* 200 Ark. 1027, 143 S. W. 2d 1, the Court said these mandates are for the protection of the jurors. In *State* v. *Fox,* 122 Ark. 197, 182 S. W. 906, it was said the proceedings of a grand jury should be kept secret and cannot be reviewed by a trial court on a motion to quash an indictment. Appellants argue that members of the Grand Jury investigated the facts upon which this complaint was based and that they had no legal right to use this information as they are here attempting to do.

We find no merit in appellants' contention on this point. It is conceded that all five plaintiffs are qualified as electors and taxpayers to maintain this action. The information, or at least most of it, is a matter of public record, and appellants do not point out what, if any, information was obtained otherwise. Even if some of the plaintiff-jurors did obtain some of their information as jurors, we know of no law or rule that would prevent them from using it in an action of this kind to protect the public interest. In 24 Am. Jur. *Grand Jury,* § 50, page 867, there is a discussion, under the heading "Application of Rule Permitting Disclosure of Evidence," which contains this statement:

"These illustrations of the extent of the rule requiring secrecy of the grand jury's proceedings amply sustain the statement, often made, that any person may disclose in evidence what transpired before the grand jury wherever such disclosure becomes necessary for the protection of public or private rights. Indeed, there is authority that a grand juror may, after the grand jury has been discharged and the accused has been taken into cus-

tody, disclose to the accused's counsel the evidence on which the indictment against him was based, in order to enable him to make defense. Statutes sometimes permit an accused person to procure a stenographic record of the testimony taken before the grand jury.''

In addition to the above there is another sufficient reason for the chancellor's refusal to dismiss the complaint in this case. Even if it be conceded (as we do not) that the jurors were not proper plaintiffs, still the prosecuting attorney could maintain this action. We do not find that appellants seriously challenge his status as a proper party plaintiff. Ark. Stats. § 17-711 makes it the ''express duty'' of the prosecuting attorney to enforce the terms and conditions of Amendment No. 10 to the Constitution of 1874 dealing with the prohibition against a county judge authorizing any contract in excess of the revenues, which is one of the principal issues in this case. The following section, § 17-712, subjects the prosecuting attorney to impeachment if he fails to perform his duty.

2. It is next argued by appellants that the transactions heretofore described were not void and that the chancellor erred in so holding. The onus of the contention is directed toward showing the contracts do not violate Amendment No. 10 to the Constitution. The pertinent part of this Amendment reads:

''. . . no county court . . . or agent of any county shall make or authorize any contract . . . for any purpose in excess of the revenue from all sources for the fiscal year in which said contract . . . is made.''

Using the audit for 1959, made by the State of the finances of Garland County, appellants appear to contend that the contracts (together with other expenditures) did not exceed the available revenues for 1959. The audit showed the county's total revenue available for expenditures for 1959 to be $550,781.33 and the total actual expenditures for that year to be $551,820.90.

It is our opinion that the numerous contracts mentioned above violate the spirit and the plain provisions of Amendment No. 10 of the Constitution set out above.

While the words "County Judge" do not appear in the foregoing quotation it is inconceivable that we should interpret the amendment so as to give the county judge more power to make contracts for the county than is given to the county court. It is admitted here that Judge Warren executed the contracts without prior authorization by the county court. Appellants, it seems to us, in arguing that the expenditures did not exceed the revenue, overlook the payments to be made in 1960. Amendment No. 10 has been construed many times by this Court and always contrary to appellants' contentions in this case. See: *Kirk* v. *High,* 169 Ark. 152, 273 S. W. 390; *Carter* v. *Cain,* 179 Ark. 79, 14 S. W. 2d 250; *Nelson* v. *Walker,* 170 Ark. 170, 279 S. W. 11; *Luter* v. *Pulaski Hospital Association,* 182 Ark. 1099, 34 S. W. 2d 770; *Stanfield* v. *Friddle,* 185 Ark. 873, 50 S. W. 2d 237; *Warren* v. *State,* 232 Ark. 823, 340 S. W. 2d 400, and there are others too numerous to mention. In the last two citations mentioned we held such contracts to be "wholly void". In the case of *City of Little Rock* v. *White Company,* 193 Ark. 837, 103 S. W. 2d 58, this Court, after citing other cases, said:

"To make a contract in one year to be paid out of the revenue of a succeeding year is a violation of Constitutional Amendment No. 10."

In addition to what we have already said we point out also that the contracts, which provided for interest on the unpaid balances, violate Amendment No. 13 of the Constitution. The pertinent part of this Amendment reads:

"Neither the State nor any . . . county . . . shall ever lend its credit for any purpose whatever; nor shall any county . . . ever issue any interest-bearing evidences of indebtedness, except . . . ."

The exception indicated in the last word quoted above has no relevancy to the facts and issues in the case before us.

3. We cannot agree with the contention that the banks were *bona fide* purchasers and holders in due

course. They rely on Ark. Stats. § 68-101 and § 68-152 (sections of the Uniform Negotiable Instrument Act) to sustain their contention. The latter section provides that a "holder in due course" is one who has taken an instrument under the following conditions: (1) It is complete and regular upon its face; (2) it is taken in good faith and for value; (3) the taker had no notice of an infirmity. We are unwilling to hold that the banks, in good faith, had no notice the contracts were not "regular" and had no "infirmities". The contracts clearly showed that they bore interest in violation of Amendment No. 13 and that some of the installments became due in 1960 in violation of Amendment No. 10 as interpreted by our decisions. To hold otherwise would virtually destroy the effect of the two amendments, opening the way for an unscrupulous or careless county judge to wreck the financial stability of his county.

4. We find no merit in appellants' contention that the contracts were ratified by virtue of the county having made payments thereon. Having held the contracts were "void" they could not be ratified. See: *Forrest City* v. *Orgill,* 87 Ark. 389, 112 S. W. 891 and *Lamar Bath House Company* v. *City of Hot Springs,* 229 Ark. 214, 315 S. W. 2d 884. What we have said applies likewise to the defense of estoppel. We have examined other contentions made by appellants under this point but find nothing to justify a reversal.

5. Under this point appellants state: "The trial court erred in granting plaintiffs excessive relief and priority to which they are not entitled". Instances of alleged excessive relief complained of by appellants are discussed below.

(a) The record shows that a patrol, owned by the county, was sold to Goodwin by Warren who later bought it back after Goodwin had allegedly spent some $4,000 on repairs. As before set out the chancellor impressed a lien on all the property purchased from Goodwin to secure payment of the judgment. The chancellor, however, excluded this particular piece of equipment from such lien. In this we think the chancellor was correct.

He could have found this sale to Goodwin was a part of an overall scheme to defraud the county and that Goodwin was a party to such a scheme. Such being the case Goodwin could not come into a court of equity and seek to profit by his own scheming. Moreover, Judge Warren had no right to sell county property without complying with Ark. Stats. § 17-305. It does not appear that this was done.

(b) The chancellor held that the First National Bank (as in the case of other banks) must repay to the county the sum of $2,500. This was the amount which the bank received as payment from the county on the first installment due on May 16, 1959, being a part of the transaction designated (b) heretofore. For reasons already stated this transaction violated Amendments No. 10 and No. 13 and was therefore void, and the chancellor correctly ordered the bank to make repayment.

Finding no error, the decree of the trial court is affirmed.

Affirmed.