The Honorable Robert Herzfeld Prosecuting Attorney Twenty-Second Judicial District 102 South Main Street Benton, Arkansas 72015
Dear Mr. Herzfeld:
I am writing in response to your request for an opinion on four questions concerning a contract between the Saline County sheriff and a private company to provide inmate telephone services in the county jail. Specifically, you provide the following information and pose the following questions:
 On December 21, 2005, Saline County Sheriff Phil Mask executed a five year contract for inmate telephone services to be provided to Securus Technologies. The contract automatically renews every five years. As part of the contract, Securus Technologies agreed to pay the Sheriff a "signing bonus in the total amount of $55,000.00."[1] The "signing bonus" was broken down in the following ways: 1) $20,000 which was paid to the sheriff's office and deposited by the County Treasurer in the Sheriff's communications account; 2) $3,000 for the purpose of funding expenses to attend certain functions on behalf of the National Sheriff's Association"; and 3) $32,000 which was "placed in a fund from which [the Sheriff] may request draws as needed for discretionary purposes during" the first five years of the contract.
You also state that "as further background information . . . the contract does not require the county to expend any funds to Securus; however, the contract gives Securus the exclusive right to charge inmates in the county jail for telephone services with a percentage of Securus's gross proceeds paid to the county and deposited in the Sheriff's communication fund." You pose the following four questions regarding these facts:
 1. Can a Sheriff enter into a five year self-renewing contract binding the county without authorization from the Quorum Court or County Judge?
 2. Can a Sheriff negotiate and agree to terms in such a contract which directly benefit an individual or organization other than the county, i.e., $3,000 for the Sheriff's travel expenses on behalf of the National Sheriff's Association?
 3. Can a sheriff negotiate and agree to a contractual term which creates an expense account against which the Sheriff may present bills for payment "as needed for discretionary purposes?"
 4. In the event the answer to any (or all) of the preceding three questions is in the negative, what is the appropriate remedy and who is responsible for taking action?
RESPONSE
In my opinion the answer to your first question is "no." In my opinion the answer to your second question will depend upon the facts. Section 14-14-1202 may, depending upon the facts, prohibit the conduct you describe. Additional statutes of possible applicability are under the jurisdiction of the Arkansas Ethics Commission. Assuming your third question refers to the maintenance of an "expense account" outside the county treasury, in my opinion the answer is "no." In response to your fourth question resort to the judicial process may be necessary to determine the rights of the parties. Case law indicates the prosecuting attorney or individual taxpayers have standing to challenge such contracts. The provisions of A.C.A. § 14-14-1202
are enforceable by the prosecuting attorney or by any citizen of the county through circuit court action. Again, other potentially applicable statutes are within the jurisdiction of the Arkansas Ethics Commission.
Question 1 — Can a Sheriff enter into a five year self-renewingcontract binding the county without authorization from the QuorumCourt or County Judge?
It is my opinion that the answer to this question is "no." The county judge, in my opinion, has the authority to enter into the contract at issue.[2]
The issue of county jail inmate telephone services is addressed at A.C.A. § 12-41-105, which provides as follows:
 (a) Commissions derived from prisoner telephone services provided in the various county and regional detention facilities in the state shall be deposited in the county treasury of the county in which the detention facility is located and shall be credited to the sheriff's office fund.
 (b)(1) Of the commissions deposited in the sheriff's office fund in each county pursuant to subsection (a) of this section, one hundred percent (100%) shall be credited to the sheriff's office communications facility and equipment fund.
 (2) Each sheriff's office may allocate for the maintenance and operation of the county jail up to fifty percent (50%) of the commissions deposited to the sheriff's office communications facility and equipment fund.
 (c) The provisions of this section do not apply to funds derived from prisoner telephone services provided in Department of Correction facilities or Department of Community Correction facilities or in municipally owned detention facilities or in county detention facilities in counties with a population of one hundred seventy-five thousand (175,000) or more according to the latest federal decennial census.
Although this statute directs the deposit of "commissions" arising from such services, it does not name or address the official authorized to enter into the contracts giving rise to such commissions, much less any "signing bonus" paid in connection with such contract. To answer your first question pertaining to the authority to enter into the contract, resort must be had to other law governing county operations.
It is clear under Arkansas law that the county sheriff has supervision of the county jail:
 The sheriff of each county in this state shall have the custody, rule, and charge of the jail within his or her county and all prisoners committed in his or her county, and he or she may appoint a jailer for whose conduct he or she shall be responsible.
A.C.A. § 12-41-502 (Repl. 2003).
This language, although investing the sheriff with "charge" of the jail, does not expressly address the ability to enter into contracts on behalf of the county. That topic is addressed at A.C.A. § 14-14-1102, regarding the authority of the county judge. Subsection (b)(2)(C)(ii) states in this regard as follows:
 (ii) The county judge shall have the authority to enter into necessary contracts or other agreements to obligate county funds and to approve expenditure of county funds appropriated therefor in the manner provided by law.
The difficulty in applying this statute to the facts at hand is that the contract for the provision of inmate telephone services, as you have noted, "does not require the county to expend any funds to Securus. . . ." Thus, the statutory subsection above, does not appear to apply literally, there being no "obligat[ion] [of] county funds" present in the contract. Other provisions of A.C.A. § 14-14-1102 must also be considered, however. Subsection (b)(5)(A) provides that:
 (5)(A) Hiring of County Employees, Except Those Persons Employed by Other Elected Officials of the County. The county judge, as the chief executive officer of the county, shall be responsible for the employment of the necessary personnel or for the purchase of labor or services performed by individuals or firms employed by the county, or an agency thereof, for salaries, wages, or other forms of compensation.
(Emphasis added).
Subsection (b)(5)(B)(ii)(b) of the same statute makes plain, however, that:
 (b) The jurisdiction to purchase the labor of an individual for salary or wages employed by other elected officials of the county shall be vested in each respective elected official.
There is a difference in the scope of these two statutes. The first, A.C.A. § 14-14-1102(b)(5)(A), is more broadly drafted. It authorizes the county judge to purchase labor or services
performed by individuals or firms for salaries, wages, orother forms of compensation. The latter, A.C.A. §14-14-1102(b)(5)(B)(ii)(b), gives elected officials other than the county judge, such as the sheriff, the power to purchase thelabor of an individual for salary or wages. In my opinion, although the contract you describe does not involve an outlay of county funds, but rather, grants the right to perform a particular service and collect the revenues therefor, the statutory subsections above indicate that the county judge is the official authorized to enter into the contract. This authority falls within the county judge's power to contract for the "services" of a "firm" for "compensation." In my opinion, the county sheriff's power to "purchase" the "labor of an individual" for "salary or wages" is not broad enough to encompass the contract at issue. See RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2nd Ed. 2001) at 1693 and 2137 (defining "salary" as "fixed compensation periodically paid to a person for regular work or services" and "wages" as "money that is paid or received for work or services, as by the hour, day, or week"); andHestand v. Erke, 227 Ark. 309, 311, 298 S.W.2d 44 (1957) (quoting WEBSTER'S as defining "salary" as "fixed compensation regularly paid, as by the year, quarter, month, or week"). Seealso, Op. Att'y Gen. 2003-012 (county judge "unquestionably has the authority to enter into contracts on behalf of the county" in connection with jail construction, although his authority is subject to appropriation by the quorum court and other fiscal laws); and Op. Att'y Gen. 1997-039 ("the sheriff is not authorized to contract unilaterally on behalf of the county (other than in the hiring of his own department's employees, see A.C.A. § 14-14-1102(b)(5)(B)(ii)(b)). He will be subject to the county purchasing procedures that are required by law").
In my opinion, therefore, the answer to your first question is "no," the sheriff does not have authority to enter into the described contract.
Question 2 — Can a Sheriff negotiate and agree to terms in sucha contract which directly benefit an individual or organizationother than the county, i.e., $3,000 for the Sheriff's travelexpenses on behalf of the National Sheriff's Association?
My answer to your first question above may render this question moot. In any event, it is my opinion that A.C.A. § 14-14-1202
may, depending upon the facts, prohibit the conduct you describe. Subsection (c)(1)(A) of that statute provides as follows:
 (c)(1) RULES OF CONDUCT. No officer or employee of county government shall:
 (A)(i) Be interested, either directly or indirectly, in any contract or transaction made, authorized, or entered into on behalf of the county or an entity created by the county, or accept or receive any property, money, or other valuable thing for his or her use or benefit on account of, connected with, or growing out of any contract or transaction of a county.
This subsection prohibits a county official, such as a county sheriff, from accepting any "valuable thing" for "his . . . own use of benefit" in connection with a contract of the county. A factual question may arise as to whether the sheriff's travel expenses on behalf of the National Sheriff's Association are for the sheriff's "own use and benefit" or whether they are so connected to his duties as sheriff that they are for the use and benefit of the county. I am not empowered as a fact-finder in the issuance of Attorney General opinions and cannot conclusively resolve this issue.
It is possible that other statutes are implicated by your second question. See e.g., A.C.A. § 21-8-304 ("No public official or state employee shall use or attempt to use his official position to secure special privileges or exemption for himself or herself . . .); A.C.A. § 21-8-801(a)(1) ("No public servant shall: Receive a gift or compensation as defined in A.C.A. § 21-8-401 et seq., other than income and benefits from the governmental body to which he or she is duly entitled, for the performance of the duties and responsibilities of his office or position. . . ."See however, A.C.A. § 21-8-401 (5)(B)(ii) (Repl. 2004) (excluding from the definition of "gift" "[t]he giving or receiving of food, lodging, or travel which bears a relationship to the public servant's office and when appearing in an official capacity"). Enforcement of, and the ability to issue advisory opinions on the provisions of these statutes is vested in the Arkansas Ethics Commission. A.C.A. § 7-6-217(g) (Supp. 2005). As a consequence, questions about the applicability of such statutes to the conduct you describe should be directed to the Arkansas Ethics Commission.
Question 3 — Can a sheriff negotiate and agree to a contractualterm which creates an expense account against which the Sheriffmay present bills for payment "as needed for discretionarypurposes?"
You have not indicated where this expense account is maintained. You have stated only that the moneys would be "`placed in a fund from which [the Sheriff] may request draws as needed for discretionary purposes during' the first five years of the contract." I am uncertain, therefore, whether your question refers to an expense account maintained by the private vendor ("Securus"), or whether it contemplates an account maintained by the county sheriff outside the county treasury, or to an account in the county treasury. In any event, it is my opinion that such an arrangement is contrary to state law. In this regard A.C.A. §14-14-1313 provides that:
 All public funds coming into the possession of any officer of the county shall be remitted to the county treasury in a manner prescribed by law.
See also, A.C.A. § 21-6-310 (Repl. 2004) ("[a]ll fees, fines, penalties, and other moneys collected by any county officer . . . shall be deposited with the county treasurer. . . .").
In my opinion, these mandates may not be evaded by having a private vendor retain moneys in an "expense account" for the county officer's discretionary use. In addition, although county sheriffs are authorized in some instances to maintain accounts outside the county treasury (see e.g., A.C.A. § 21-6-307, authorizing the sheriff's "communications facility and equipment fund" to be maintained in an "interest-bearing account or certificate of deposit in one (1) or more banking institutions . . ."), such authorization must be established in accordance with state statutes. I am not aware of any state statute authorizing the sheriff to maintain an account for the discretionary "expense account" you describe. Seealso, Op. Att'y Gen. 91-407 (". . . the requirement of Amendment 55, § 3 to the Arkansas Constitution that the county judge authorize and approve all disbursement of appropriated county funds argues against the wholesale deposit of funds appropriated to a county official into a bank account for his or her unsupervised use"); and Op. Att'y Gen. 1993-049
(county sheriff was not authorized to purchase a vehicle for his official use from county tax collector's commissions, rather, the purchase must be preceded by an appropriation by the quorum court and approval of the county judge.)
Finally, in the unlikely event that your question refers to a discretionary account to be maintained in the county treasury, then all of the requirements relating to the appropriation and disbursement of county funds will attach. Id.
In my opinion, therefore, the answer to your third question, assuming you are referring to an account outside the county treasury, is "no."
Question 4 — In the event the answer to any (or all) of thepreceding three questions is in the negative, what is theappropriate remedy and who is responsible for taking action?
To the extent the contract at issue was entered without authority, resort to judicial process may be necessary to determine the rights of the parties. The resolution of the issue will involve an analysis of all the surrounding facts. Different facts can lead to different outcomes. See e.g., Goodwin v.State, 235 Ark. 457, 464, 360 S.W.2d 490 (1962) (holding "void" contracts executed in violation of Arkansas Constitution, art. 12, § 4 and stating that "[h]aving held the contracts were `void' they could not be ratified"). But see also, American Federationof State, County and Municipal Employees, Local 380 v. Hot SpringCounty, Arkansas, 362 F.Supp.2d 1035 (W.D. Ark. 2004), (citingWatson v. Union County, 193 Ark. 559, 101 S.W.2d 791 (1937) andLeathern Company v. Jackson County, 122 Ark. 114,182 S.W. 570 (1916) for the proposition that a "county may . . . ratify an unauthorized contract made in its behalf, if it is one the county could have made in the first instance. Such ratification will be equivalent to original authority"). See also, McCuistion v. Cityof Siloam Springs, 268 Ark. 148, 151, 594 S.W.2d 233 (1980) (citing cases to the effect that "a void or illegal contract does not necessarily prevent recovery"); City of Damascus v. Bivens,291 Ark. 600, 602, 726 S.W.2d 677 (1987) (stating that: "We have permitted restitution based on unjust enrichment even when the associated contract was `void'); and Crawford v. Lee CountySchool District, 64 Ark. App. 90, 97, 983 S.W.2d 141 (1998) (noting, however, that "[i]n order for the legal theory of unjust enrichment to pertain, there must be some enrichment or benefit to the party against whom the claim is made"). I am not invested as a fact finder in the issuance of official Attorney General Opinions. The prosecuting attorney, as well as individual taxpayers, has been held a proper party to bring an action challenging an unauthorized county contract. See e.g., Goodwinv. State, supra.
As for the enforcement of the statutes I mentioned above regulating ethical conduct, A.C.A. § 14-14-1202 authorizes any citizen of the county or the prosecuting attorney to bring an action in circuit court. A violation of A.C.A. § 14-14-1202 is punishable as misdemeanor and the statute makes provision for removal from office upon a conviction. See A.C.A. § 14-14-1202
(d). As noted previously, questions as to violation of other statutes regulating ethical behavior of public officials are within the jurisdiction of the Arkansas Ethics Commission.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] You note at this point that the internal quotations are taken directly from the December, 2005 contract.
[2] Because of my conclusion that the county judge, rather than the county sheriff, is the appropriate official to enter into the contract, it is not necessary to address any legal issues pertaining to the length or self-renewing aspects of the contract.