# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 07-1589

_____

American Federation of State,     *
County and Municipal Employees,  *    Appeal from the United States
Local 2957, et al.,             *    District Court for the
                             *    Eastern District of Arkansas
      Plaintiffs- Appellees,    *
                             *     [PUBLISHED]
   v.                      *
                             *
City of Benton, Arkansas, et al.,   *
                             *
     Defendants - Appellants.  *
                             *
                             *
                             *

_____

Submitted:  November 15, 2007
Filed:  January 25, 2008

_____

Before WOLLMAN and BENTON, Circuit Judges, and DOTY,[1] District Judge.

_____

DOTY, District Judge.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

The American Federation of State, County and Municipal Employees, Local 2957 (the "Union") and Terry White (collectively "plaintiffs") sued the City of Benton (the "City"), Arkansas; its Aldermen Doug Strancener, Phillip Montalvo, Karla J. Haley, Willie Floyd, Ray Freemen, Leroy Allen, Ann Hall, Robin Berry, Claudine Ramsey and Charles Cuningham, in their official capacities as members of the City Council; and its mayor, Rick Holland (collectively "defendants"), to enjoin the City to continue paying retiree health insurance premiums. The district court[2] granted plaintiffs' motion for judgment on the pleadings and, after a bench trial to determine the appropriate remedy, ordered the City to pay health insurance premiums for the specified Union-represented city employees upon retirement. Defendants appeal, and we affirm.

## I.    BACKGROUND

Beginning in 1976, the Union negotiated collective bargaining agreements ("CBA") with the City on behalf of nonuniform Benton city employees. The parties entered into the CBA at issue in this action on June 14, 2002, and it expired on December 31, 2004. The CBA established rates of pay, hours of work, conditions of employment and provided for various types of insurance for employees upon retirement. In relevant part, Appendix B to the CBA provides that "[r]etirement coverage is 100% paid by the City of Benton." (Appellant App. at 236.) Since 1989, the City has paid the premiums on the health insurance for its retired nonuniform employees.

At the recommendation of its personnel committee, the City Council passed a

_____

[2] The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota, sitting by designation in the Eastern District of Arkansas.

resolution on October 13, 2003, altering health insurance coverage for its retired employees. The resolution declared that effective January 1, 2004, the City would continue paying 100% of health insurance premiums for retired employees only for employees having more than 28 years of service, cease paying any portion of health insurance premiums for employees with less than ten years of service, and reduce payments to 3% of the premium for each year of service for all of the remaining employees. On March 22, 2004, the City Council again addressed the issue of retiree health insurance. Based on its belief that Arkansas Code § 24-12-129 required retirees to pay their own premiums, the City Council passed a resolution terminating any City payment of retiree health insurance premiums.

Two months later, on May 17, 2004, plaintiffs filed an action seeking to enjoin defendants from enforcing the March 22 resolution. Before answering, defendants moved to dismiss the complaint on June 7, 2004. Plaintiffs moved for judgment on the pleadings on July 22, 2004. On August 2, 2005, the district court granted plaintiffs' motion for judgment on the pleadings in part and denied defendants' motion to dismiss. The City then filed an answer to plaintiffs' complaint on January 10, 2006.

On January 27, 2006, the district court amended its order to certify the case for interlocutory appeal. We considered and denied defendants' petition for permission to file an interlocutory appeal on February 17, 2006. On January 9, 2007, the district court held a one-day bench trial to address plaintiffs' remedy. After trial, each side moved the court to amend its pleadings to conform to the evidence. Plaintiffs sought to include the City Council's October 2003 resolution altering retirement health insurance premium coverage as an additional breach of the CBA. Defendants opposed that addition and in the alternative moved the court to add the defense of illegality to its answer. On January 31, 2007, the district court granted plaintiffs' motion and denied defendants' motion. Two weeks later, on February 13, 2007, the district court issued an order affirming its prior ruling that the City Council's October 2003 and

March 2004 resolutions were unconstitutional impairments of the CBA. The court

nullified the City Council resolutions and enjoined defendants from enforcing them against city employees with a vested right to the retiree health insurance premiums.

On appeal, defendants argue that the district court erroneously concluded that the October 2003 and March 2004 resolutions violated the United States Constitution. Defendants further argue that the district court abused its discretion by denying their motion to amend the pleadings and that the remedy ordered by the district court was clearly erroneous. We disagree.

## II.    DISCUSSION

The district court granted plaintiffs' motion for judgment on the pleadings before defendants answered but failed to treat the motion as one for summary judgment. See Season-All Indus., Inc. v. Turkiye Sise Ve Cam Fabrikalari, A.S., 425 F.2d 34, 36 (3d Cir. 1970) (motion for judgment on the pleadings before answer is improper and should be treated as motion for summary judgment). Nevertheless, any error in a district court's "failure to treat a motion for judgment on the pleadings as one for summary judgment 'is harmless if the nonmoving party had an adequate opportunity to respond to the motion and material facts were neither disputed nor missing from the record.'" Surgical Synergies, Inc. v. Genesee Assocs., Inc., 432 F.3d 870, 873 (8th Cir. 2005) (quoting Kerr v. Fed. Emergency Mgmt. Agency, 113 F.3d 884, 885 (8th Cir. 1997)). Here, the court granted defendants ample opportunity to respond to plaintiffs' motion and eventually allowed defendants to file an answer. Further, material facts were neither disputed nor missing. By filing a motion to dismiss, defendants averred that all facts in the complaint should be taken as true. Moreover, when they answered, defendants admitted all relevant facts save the legitimacy and continued existence of the CBA–matters of law for the court to

determine. Defendants, therefore, received comparable review and treatment despite the procedural impropriety, and any error by the district court was at most harmless. However, because the district court should have construed plaintiffs' filing as a motion for summary judgment, we review the case under the summary judgment standard.

We review de novo the district court's grant of summary judgment in favor of plaintiffs. Mayer v. Nextel W. Corp., 318 F.3d 803, 806 (8th Cir. 2003). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). We view all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex v. Catrett, 477 U.S. 317, 324 (1986).

## A. Contractual Impairment

The Contract Clause of the United States Constitution provides that no state shall "pass any Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. A three-part test determines whether state action violates the Contract Clause. First, we ask whether "the state law has, in fact, operated as a substantial impairment on pre-existing contractual relationships." Equip. Mfrs. Inst. v. Janklow, 300 F.3d 842, 850 (8th Cir. 2002). This first prong involves a three-part inquiry: "[1] whether there is a contractual relationship, [2] whether a change in law impairs that contractual relationship, and [3] whether the impairment is substantial." Gen. Motors Corp. v. Romein, 503 U.S. 181, 186 (1992). If substantial impairment existed, we determine whether the state has a "significant and legitimate public purpose behind the regulation." Educ. Employees Credit Union v. Mut. Guar. Corp., 50 F.3d 1432, 1438

(8th Cir. 1995) (internal citation omitted). If there is no significant and legitimate public purpose, the state law is unconstitutional under the Contract Clause. See Equip. Mfrs., 300 F.3d at 850. If, however, the state identifies such a public purpose, we lastly consider "whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption." Energy Reserves Group, Inc. v. Kan. Power & Light Co., 459 U.S. 400, 412 (1983) (internal quotations and alterations omitted).

## 1. The Contractual Relationship

The district court found that the CBA was a valid agreement between the City and the Union. Defendants challenge this threshold determination. Specifically, they argue that the language of the agreement never required the City to pay retiree health insurance premiums, that the CBA's health insurance provision was illegal under Arkansas law, that the City did not have the authority to enter into a multi-year agreement with the Union and that the payment of retiree health insurance premiums is a matter of city policy that cannot be contracted away.

The plain language of the CBA states that "[r]etirement coverage is 100% paid." (Appellant App. at 236.) Defendants maintain that this provision does not obligate the City to pay retiree health benefits because "retirement coverage" was not defined in the CBA. Labor laws, however, "do not require all the details of particular practices to be worked out in advance." Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 318 (1989). Rather, it is "well established that the parties' practice, usage and custom is of significance in interpreting their agreement." Id. at 311. Since 1996, CBAs between the City and the Union have contained similar "retirement coverage" language, which the City has interpreted to mean that it pays retiree health insurance premiums. (See Appellant Supplemental App. at 224.) Indeed, City Council minutes demonstrate that the City began paying retiree

-6-

premiums as early as 1989.  (See id. at 295.)  Therefore, the absence of a specific explanation of "retirement coverage" does not undermine plaintiffs' claim that the CBA calls for City payment of health insurance premiums.  We find that the CBA language interpreted in the light of the City's past practice reflects an agreement to pay retiree health insurance premiums.

As to defendants' contention that the CBA violates state law, the district court determined that the statutes in question–Arkansas Code §§ 24-12-129 and 24-12-130–did not prohibit the City from paying retiree health insurance premiums.  Section 24-12-129 states:

> When any municipal officer or municipal employee age fifty-five (55) or over who has completed twenty (20) years of service to the municipality and who is vested in the retirement system retires, the official or employee may continue to participate in the municipality's health care plan, receiving the same medical benefits and paying the same premium as active employees as long as the retired official or employee pays both employer and employee contributions to the health care plan.

Defendants read § 24-12-129 in conjunction with § 24-12-130[3] and argue that these laws make it illegal for the City to pay retiree health insurance premiums.  No Arkansas court has interpreted §§ 24-12-129 or 24-12-130, but the Arkansas attorney

---

[3] Arkansas Code § 24-12-130 provides:

Nothing contained in § 24-12-129 should be interpreted to prevent a municipality from providing benefits contained in § 24-12-129 to retirees who are less than age fifty-five (55) or who have completed fewer than twenty (20) years of municipal service.  Further, any person who qualified and participated in a municipal health care plan under § 24-12-129 shall continue to be eligible to participate in the health care plan after August 1, 1997.

general issued a 2004 opinion concluding that the statutes bar municipalities from paying for retiree health insurance. As the district court noted, however, the attorney general's opinion is not binding precedent, Ark. Prof'l Bail Bondsman Licensing Bd. v. Oudin, 69 S.W.3d 855, 862 (Ark. 2002).

We find that §§ 24-12-129 and 24-12-130 do not prevent the City from contracting to pay retiree health insurance premiums. As the district court correctly determined, § 24-12-129 gives municipal employees the right to maintain insurance coverage. It does not, however, restrict a municipality's ability to offer its employees more or varied coverage, as § 24-12-130 clarifies. By acknowledging that municipalities can offer benefits outside of the strictures of § 24-12-129, § 24-12-130 stresses that § 24-12-129 is meant to protect municipal employees–not to dictate the mandatory terms of a municipality's retiree health insurance coverage. Therefore, the City could contract to pay retiree health insurance premiums without running afoul of § 24-12-129.

For the first time on appeal, defendants claim the Arkansas constitution prevented the City from entering into a multi-year agreement with the Union. Article 12, § 4 of the Arkansas state constitution provides that the fiscal affairs of cities shall be conducted on a "sound financial basis" and that a city council shall not "enter into any contract or make any allowance for any purpose whatsoever, or authorize the issuance of any contract or warrants, scrip or other evidences of indebtedness in excess of the revenue for such city or town for the current fiscal year." The Arkansas Supreme Court addressed article 12, § 4 in Goodwin v. State ex rel. Whittington, 360 S.W.2d 490 (Ark. 1962), which defendants argue governs this case. In Goodwin, a county judge entered into agreements on behalf of Garland County to purchase road equipment through an installment payment plan. The Arkansas Supreme Court voided the contract, finding that making "a contract in one year to be paid out of the revenue of a succeeding year is a violation of [article 12, § 4]." 360 S.W.2d at 494 (quoting

City of Little Rock v. White Co., 103 S.W.2d 58 (Ark. 1937)).  We find obvious differences between the facts in Goodwin and the instant case.  Notably, the county judge in Goodwin entered into the contracts without the express approval of the county court.  Id. at 493.  Here, the City knowingly entered into the CBA with the Union–as it had for the previous twenty-five years.  More important, an installment-plan contract to purchase road equipment is not comparable to a collectively bargained employment agreement to provide health insurance benefits.  See Transp.-Commc'n Employees Union v. Union Pac. R.R. Co., 385 U.S. 157, 160 (1966) ("A collective bargaining agreement is not an ordinary contract for the purchase of goods and services, nor is it governed by the same old common-law concepts which control such private contracts.").

We find City of Little Rock v. White Co. more instructive.  In White, the city of Little Rock invoked article 12, § 4 in an attempt to avoid purchasing a truck that it had used for two years and purportedly agreed to purchase.  See 103 S.W.2d at 59.  The Arkansas high court held that the city could not take refuge in article 12, § 4 to avoid a contract from which it had already benefitted.  Id. at 60.  The court determined that after paying "the necessary expenses of operating the city government . . . [the city] may then make contracts and make payments, provided the contracts or payments do not exceed the revenue for the year in which they are made."  Id.  Although it concerns the purchase of equipment, White informs our decision in the instant case.  As in White, defendants have already benefitted from the services provided by plaintiffs.  Further, defendants have presented no evidence that the obligation to pay for retiree health insurance premiums exceeded the City's yearly revenue.  Any health-care-related monetary obligation is set by the City's contract with the health insurance provider.  Thus, the City's multi-year agreement with the Union actually boils down to a series of yearly contracts with the health insurance provider that cannot exceed annual City revenues.  Therefore, the City did not violate article 12, § 4 by entering into a multi-year agreement with the Union.

Finally, defendants argue that the CBA is void because it was against public policy for the City to contract away its right to manage the fiscal matters of the City. The Arkansas Supreme Court has held that a city has "the right in exercising its legislative and governmental functions to protect the health, safety and general welfare of its people . . . and may not contract away any such right. [Therefore, a] municipality cannot bind itself by a perpetual contract, or by one which lasts an unreasonable length of time." Lamar Bath House Co. v. City of Hot Springs, 315 S.W.2d 884, 886 (Ark. 1958) (internal quotation omitted). A two-year CBA that the City itself negotiated is neither perpetual nor unreasonably long, and we find that the City did not abdicate power by entering into the CBA. Instead, it exercised its governmental function of protecting the general welfare of the city by hiring municipal employees to serve the populace. Upon the expiration of the agreement, the City was free to renegotiate terms with the Union based on its fiscal restraints. In attempting to alter the CBA's terms unilaterally, however, the city impaired its agreement with plaintiffs. See City of Walla Walla v. Walla Walla Water Co., 172 U.S. 1, 17 (1898) ("But where a contract . . . is innocuous in itself, and is carried out with due regard to the good order of the city and the health of its inhabitants, the [city] cannot . . . abrogate or impair it.")

For these reasons, we find that there was a contractual relationship between the City and the plaintiffs that the City impaired through its 2003 and 2004 resolutions. Defendants do not challenge the district court's determination that the impairment was substantial. However, they argue that the district court overlooked the significant and legitimate public purpose behind their actions. If such a purpose exists, we ask whether the city action appropriately addressed that purpose.

## 2. Significant and Legitimate Public Purpose

Private contracts are not subject to "unlimited modification under the police power." U.S. Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 22 (1977). Instead, laws

-10-

intended to regulate existing contractual relationships must serve a legitimate public purpose.  See Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 444-45 (1934). Defendants argue that conforming the City's conduct to § 24-12-129 was a significant and legitimate public purpose.  As we have already discussed, however, defendants misinterpreted the meaning of § 24-12-129, reading it as granting an exclusive rather than an inclusive right.  Section 24-12-129 ensures that retired employees could have continued access to health insurance.  It does not dictate the only terms upon which that health insurance was available, as explained in § 24-12-130.  Defendants' erroneous interpretation of state law does not qualify as a significant or legitimate public purpose.

The district court also found that the City had not demonstrated a significant economic interest to justify its actions.  Although economic concerns can give rise to the City's legitimate use of the police power, such concerns must be related to "unprecedented emergencies," such as mass foreclosures caused by the Great Depression.  Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 242 (1978). Further, to survive a challenge under the Contract Clause, any law addressing such concerns must deal with a broad, generalized economic or social problem.  Cf. Blaisdell, 290 U.S. at 445.  Here, although defendants offered testimony of Alderman Allen to suggest that the 2003 resolution was a matter of economic necessity, they never demonstrated that the City faced the "unprecedented emergency" required to justify the abrogation of the CBA.  Nor do the minutes of the October 2003 meeting at which the resolution was passed reveal any discussion of budgetary concerns or a broad economic problem prompting action.  (See Supplemental App. at 296.)  For these reasons, the City's action was not a legitimate exercise of the police power. Accordingly, we find that the district court correctly determined that the resolutions were unconstitutional under the Contract Clause, and we need not address the final prong of the contractual impairment inquiry.  See Equip. Mfrs., 300 F.3d at 850.

**B. Motion to Amend the Pleadings**

We review the trial court's denial of a party's motion to amend its pleadings for an abuse of discretion. See Thomas v. Corwin, 483 F.3d 516, 532 (8th Cir. 2007). Federal Rule of Civil Procedure 15(b)(2) provides that when an issue "not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." A party may move to amend the pleadings to conform them to the evidence and to raise an unpleaded issue, but the failure to amend does not affect the result of the trial of that issue. Fed. R. Civ. P. 15(b)(2). Amendments under Rule 15(b) are to be "liberally granted 'where necessary to bring about the furtherance of justice and where the adverse party will not be prejudiced.'" Mouser v. Caterpillar, Inc., 336 F.3d 656, 666 (8th Cir. 2003) (quoting McLaurin v. F.C. Prater, 30 F.3d 982, 985 (8th Cir. 1994)). The decision to permit or deny an amendment "remains within the discretion of the district court." Id.

The district court granted plaintiffs' motion to amend their pleadings but denied defendants' motion to do the same. Defendants argue that the district court erred by allowing plaintiffs to proceed with a new claim while denying defendants the right to a defense on the new claim. We disagree. The district court correctly determined that plaintiffs' amendment does not create or affect the illegality defense because defendants could have raised that defense against plaintiffs' original claims. Additionally, although the district court denied defendants' motion to amend, it allowed them to make an offer of proof that included the illegality defense. (See Appellant App. at 199.) Therefore, defendants suffered no prejudice as a result of the district court's decision, and we find that the district court did not abuse its discretion when it denied defendants' motion to amend.

## C. Remedy

We review a district court's findings of fact regarding the remedy under a clearly erroneous standard, and there is a strong presumption that the findings are correct. See Chakales v. Comm'r of Internal Revenue, 79 F.3d 726, 728 (8th Cir. 1996). The availability of a "particular remedy . . . is a question of law which we review de novo." Emergency Med. Servs., Inc. v. St. Paul Mercury Ins. Co., 495 F.3d 999, 1010 (8th Cir. 2007) (citing Entergy Ark., Inc. v. Nebraska, 358 F.3d 528, 556 (8th Cir. 2004)). The district court held a bench trial to determine the appropriate remedy in this matter at which it allowed defendants to offer proof and present defenses. After trial, the district court determined that the 2003 and 2004 resolutions were null and void and that the City owed twenty-nine city employees with vested contract rights under the CBA health insurance premium payments upon retirement. (See Appellant App. at 260.) Defendants argue that the remedy imposed by the district court was excessive. Specifically, they argue that the right to retirement benefits ended when the CBA expired on December 31, 2004.

Retiree health benefits will survive the expiration of a CBA if they vest before the agreement expired. See Crown Cork & Seal Co. v. Int'l Ass'n of Machinists & Aerospace Workers, 501 F.3d 912, 919 (8th Cir. 2007). Such benefits fail to vest if limited by a clause "expressly limiting the duration of the retirement health benefits . . . to the duration of the Master Agreement," John Morrell & Co. v. United Food & Commercial Workers Int'l Union, 37 F.3d 1302, 1307 (8th Cir. 1994), or if the agreement contains a blanket reservation of rights to an employer to unilaterally modify or terminate the retiree health plans. See Crown Cork, 501 F.3d at 918. The CBA contains neither of these limitations; moreover, defendants offer no law to support their excessive remedy claim. Accordingly, we find that the district court properly determined the remedy in this case.

## III.  CONCLUSION

For the reasons stated, we affirm the district court's grant of judgment on the pleadings in favor of plaintiffs, its denial of defendants' motion to amend and the remedy for plaintiffs.