608 P.2d 511

**Mr. and Mrs. Stanley D. SPRAY et al.,
Plaintiffs-Appellees,**

v.

**CITY OF ALBUQUERQUE, New Mexico,
a Municipal Corporation,
Defendant-Appellant.**

No. 12420.

Supreme Court of New Mexico.

March 6, 1980.

Rehearing Denied April 8, 1980.

Susan Green, Albuquerque, for defendant-appellant.

Rodey, Dickason, Sloan, Akin & Robb, Catherine T. Goldberg, Albuquerque, for plaintiffs-appellees.

OPINION

PAYNE, Justice.

Appellee Stanley D. Spray, as the representative of a homeowner's group, sought an injunction to prevent the City of Albuquerque from constructing a five foot fence around the Arroyo del Oso Golf Course and to enforce a contract entered into by the parties which provided for lower fencing specifications. The District Court of Bernalillo County granted the injunction. The City appeals and raises three arguments as grounds for reversal. We affirm the district court.

The appellee homeowners all own houses which border the Arroyo del Oso Golf Course, situated and designed to enjoy an unobstructed view of the golf course and the distant mountains. Since 1975, the homeowners have resisted the construction of any unsightly or view-obstructing fence around the golf course.

In June of 1975, the City, without notice to the homeowners, began enclosing the golf course with a seven foot chain link fence topped with barbed wire. When numbers of homeowners protested, the City stopped construction and removed those portions of the fence already installed. Heated and protracted negotiations between the affected homeowners and the City ensued. Eventually, Mr. Spray met with Robert L. Burgan, head of the City's Parks and Recreation Department, and reached agreement on a plan acceptable to all parties. The Burgan Plan, as it was called, specified a fence height of three to four feet.

When a new city administration came into office, it began installing five foot fence posts without notifying affected homeowners. The mayor's chief administrative officer stopped construction after numerous homeowners protested and negotiations resumed again. The homeowners informed the administrator that they would sue the City for its breach of the Burgan Plan agreement if the rekindled fencing controversy were not resolved to their satisfaction. Negotiations ended in an agreement to implement the Burgan Plan with slight modifications; the revision became known as the Jaramillo agreement.

Later, without notice to affected homeowners and pursuant to the mayor's directive, the City again began installing a five foot fence. The instant litigation ensued. A temporary restraining order and, later, a preliminary injunction, stopped construction of the fence. After a trial on the merits, the City was ordered to comply with the Jaramillo agreement. The court found, *inter alia*, that:

16. After the homeowners agreed to the specifications offered by the City, they believed they had a binding commitment from the City and that the fencing controversy had finally been resolved. In reliance upon their agreement with the City, Plaintiff homeowners forebore bringing a suit. At the time of the Plaintiff homeowners' negotiations with Mr. Jaramillo, the homeowners in good faith held a reasonable belief that they had a valid claim against the City for breaching its preexisting agreement, made through the person of Mr. Frank Kleinhenz, to adhere to the Burgan Plan.

## I.

■ The City first challenges the adequacy of the consideration supporting the alleged contract. The City does not contest whether the homeowners ever had a legal right upon which they could sue. It argues that in order for the homeowners' forbearance to constitute adequate consideration, a promise to forbear from suing must have been made by one party and accepted by the other. The City relies on *Gonzales v. Gauna*, 28 N.M. 55, 206 P. 511 (1922), for the proposition that unilateral forbearance from suit, in itself, is insufficient consideration to support a contract. The City maintains that forbearance was never bargained for consideration in the negotiations between the parties. There is substantial evidence in the record, however, to suggest otherwise.

The record speaks of homeowners willing to exhaust all their remedies to protect the beauty of their properties and of a city government anxious to avoid litigation. While some contradictory evidence may be present, we will not reverse the district court if substantial evidence exists to support its decision. *Hamilton v. Doty*, 71 N.M. 422, 379 P.2d 69 (1962). There is evidence in the record which is adequate to support the district court's conclusion that the homeowners' forbearance was sufficient consideration to create a binding contract with the City.

■ The City contends that the record does not reflect that the parties ever discussed the possibility of legal proceedings, much less that they reached agreement. Even if this were true, the circumstances of this case would have justified the district court in treating the homeowners' forbearance as consideration in any event. In New Mexico, forbearance may be consideration for a contract where either an express agreement to forbear exists or where the

circumstances otherwise suggest that a contract ought to be enforced by implying such an agreement. *Gonzales v. Gauna, supra.*

## II.

■ The City next argues that it never had any intention of entering into a contract with the homeowners and that its decision to erect a five foot fence around the golf course was an administrative decision, reviewable only for arbitrariness or abuse of discretion. The short answer to this contention is that the City did enter into a contract which was supported by consideration, regardless of what its subjective intentions may have been. Once the contract was entered into, the City's administrative discretion was replaced by a legal commitment.

The City urges, however, that such a contract is void as against public policy. The City looks to that body of law which limits a municipality's contractual ability because the possibility exists that it may bargain away the sovereign powers delegated to it by the state. *Lamar Bath House Co. v. City of Hot Springs*, 229 Ark. 214, 315 S.W.2d 884 (1958), *appeal dismissed*, 359 U.S. 534, 79 S.Ct. 1137, 3 L.Ed.2d 1028 (1959).

■ There is a distinction, however, "between contracts which merely involve the propriety or business functions of the municipality and those which attempt to curtail or prohibit its legislative or administrative authority. The former [are] valid, the latter are uniformly invalid." *Wills v. City of Los Angeles*, 209 Cal. 448, 451–52, 287 P. 962, 964 (1930). According to this distinction, the question before us is whether maintenance of a municipal park or golf course is a proprietary or governmental function. New Mexico law clearly designates maintenance of a municipal park as a proprietary function. *State v. City of Albuquerque*, 67 N.M. 383, 355 P.2d 925 (1960); *Murphy v. City of Carlsbad*, 66 N.M. 376, 348 P.2d 492 (1960). Thus the City's contract with the homeowners regarding the maintenance of the golf course does not violate public policy, as the City's sovereign

powers are not impaired. Additionally, there is no reason to suspect corruption or improper influence for private gain. The agreement does not call for the exercise of personal influence for the enactment of favorable legislation nor is a personal benefit conferred upon any official as a reward for his action. We find no reason to invalidate the contract based upon this argument.

## III.

■ The City raised its final argument for the first time when it brought this action before the Supreme Court for oral argument. The City was given additional time to brief its claim that Section 37–1–23, N.M.S.A.1978, cloaked it with the defense of governmental immunity and that this defense was jurisdictional in nature so that it could be raised at any point during the proceedings.

Section 37–1–23 states:

A. Governmental entities are granted immunity from actions based on contract, except actions based on a *valid written contract.*

B. Every claim permitted by this section shall be forever barred unless brought within *two years* from the time of accrual. (Emphasis added.)

We hold that the issue of governmental immunity is jurisdictional in nature and that it may be raised at any time during the proceedings. *See State ex rel. Evans v. Field*, 27 N.M. 384, 201 P. 1059 (1921). But we also hold that Section 37–1–23 cannot be made applicable to cities because Section 37–1–24, N.M.S.A.1978, specifically applies to cities and these sections contain conflicting and irreconcilable provisions.

Section 37–1–24 provides in pertinent part:

No suit, action or proceeding at law or equity, for the recovery of judgment upon, or the enforcement or collection of any sum of money claimed due from any city, town or village in this state . . . *arising out of or founded upon any ordinance, trust relation or contract written or unwritten*, or any appropriation of or

conversion of any real or personal property, shall be commenced except within *three years* next after the date of the act of omission or commission giving rise to the cause of action, suit or proceeding. . . . . (Emphasis added.)

It is apparent that the two statutes are inconsistent concerning the binding effect that written or unwritten contracts will have upon a city and inconsistent as to the length of the statute of limitations to be applied.

When such a conflict exists between "statutes relating to the same subject," we will interpret them, if possible, so that "all of the acts will be operative." *Runyan v. Jaramillo,* 90 N.M. 629, 631, 567 P.2d 478, 480 (1977). In this instance, however, we must conclude that the Legislature never intended these statutes to relate to the same subject. Its designation of "government entities" in Section 37–1–23 cannot include cities and remain consistent with the terms of Section 37–1–24. Section 37–1–24 specifically applies to cities, towns, and villages and implicit within its terms is the allowance that New Mexico cities may be sued on written and unwritten contracts, subject to a three year statute of limitations. Section 37–1–23, therefore, does not protect the City with the governmental immunity it seeks.

For the reasons stated, we affirm the district court.

IT IS SO ORDERED.

FEDERICI and FELTER, JJ., concur.