918 P.2d 7

**Adolfo GARCIA, Plaintiff–Appellant,**

v.

**MIDDLE RIO GRANDE CONSERVANCY DISTRICT and Its Board of Directors, Defendants–Appellees.**

**No. 22790.**

Supreme Court of New Mexico.

May 21, 1996.

Law Offices of E. Justin Pennington, E. Justin Pennington, Albuquerque, for Appellant.

Hatch, Allen & Shepherd, P.A., Marcia E. Lubar, Diane P. Donaghy, Albuquerque, for Appellees.

## OPINION

BACA, Justice.

1. Plaintiff–Appellant Adolfo Garcia appeals an order by the district court granting summary judgment in favor of Defendants–Appellees, the Middle Rio Grande Conservancy District and its board of directors (collectively "the MRGCD"). Garcia filed suit, alleging the MRGCD breached an employment contract by demoting him from his position of Division Manager to the position of Equipment Operator, which resulted in a reduction in pay. The district court ruled that, pursuant to NMSA 1978, Section 37–1–23(A) (Repl.Pamp.1990), the MRGCD is a governmental entity afforded sovereign immunity. We address whether the district court erred in finding the MRGCD immune from a suit of this nature by determining that the Personnel Policy Statement (the Personnel Policy) does not constitute a "valid written contract" between the MRGCD and its employees. We note jurisdiction under SCRA 1986, 12–102(A)(1) (Repl.Pamp.1992) (providing Supreme Court jurisdiction over appeals from district court in cases sounding in contract), and reverse.

## I.

2. In his complaint, Garcia states that the MRGCD employed him since 1975. He further states that in 1976, the MRGCD hired him as the manager of the Belen Division. In August 1990, however, the MRGCD demoted him from Division Manager to the position of Equipment Operator. This demotion resulted in a reduction in pay from $17.17 per hour to $11.25 per hour. The MRGCD General Manager did send Garcia a formal letter notifying him of his demotion. However, Garcia alleges he was not informed of any specific conduct, act, or omission attributable to him as a basis for his demotion, nor given notice of, or an opportunity to correct, any deficiencies in his conduct or performance.

3. The MRGCD has a Personnel Policy which Garcia alleges is a written contract setting forth certain rights, expectations, obligations, and other promises between the MRGCD and its employees. He also alleges that the Personnel Policy provides certain criteria which govern how and by what procedures the MRGCD may demote an employee. Garcia alleges that the MRGCD demoted him in violation of the Policy, which requires a showing of good cause and notice and opportunity to improve performance, and thereby breached the employment contract.

4. In its motion for summary judgment, the MRGCD cited Section 37–1–23(A), which provides, "Governmental entities are granted immunity from actions based on contract, *except actions based on a valid written contract.*" (Emphasis added). Thus, under Section 37–1–23(A), a governmental entity is not immune from suit in actions based on valid written contracts. The MRGCD argued that the Personnel Policy is, at most, an implied contract and does not give rise to a "valid written contract" for purposes of Section 37–1–23(A); thus the MRGCD is immune from this suit. The district court agreed and granted summary judgment, concluding that the MRGCD is immune from suits of the type and nature as that brought by Garcia. Garcia now appeals the order granting summary judgment, contending

that the Personnel Policy constitutes a written employment contract sufficient to overcome the grant of governmental immunity.

## II.

5. On appeal, the MRGCD argues that the Personnel Policy does not constitute a valid written contract sufficient to overcome the grant of immunity from suits based on valid written contracts. The MRGCD argues the Personnel Policy is, instead, merely "a personnel ordinance or resolution" which is not a valid written contract as required by Section 37–1–23(A). We disagree.

■ 6. "Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Tabet Lumber Co. v. Romero,* 117 N.M. 429, 431, 872 P.2d 847, 849 (1994). We hold that the trial court erred by granting summary judgment in favor of the MRGCD.

### A.

7. In *Hicks v. State,* 88 N.M. 588, 592, 544 P.2d 1153, 1157 (1975), this Court abolished the common-law doctrine of sovereign immunity. *See Hydro Conduit Corp. v. Kemble,* 110 N.M. 173, 177, 793 P.2d 855, 859 (1990). The Court held that the decision would apply only prospectively, beginning with cases accruing on and after July 1, 1976. *Id.* Before the law went into effect, our Legislature reinstated sovereign immunity by enacting 1976 N.M.Laws, Chapter 58. *Hydro Conduit,* 110 N.M. at 177, 793 P.2d at 859. Reinstatement of immunity under Chapter 58, however, is subject to certain exceptions.

8. One exception applies to contract cases brought against governmental entities. Section 24 of Chapter 58 makes up what is now Section 37–1–23(A), the particular statute at issue in this case, which provides, "Governmental entities are granted immunity from actions based on contract, *except actions based on a valid written contract."* (Emphasis added). *See Hydro Conduit,* 110 N.M. at 177, 793 P.2d at 859. Thus, a governmental entity's contractual liability can only be based on a valid written contract.

### B.

■ 9. First, we address whether Garcia and the MRGCD entered into an employment contract. "Ordinarily, to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Hartbarger v. Frank Paxton Co.,* 115 N.M. 665, 669, 857 P.2d 776, 780 (1993), *cert. denied,* 510 U.S. 1118, 114 S.Ct. 1068, 127 L.Ed.2d 387 (1994). Indeed, the conduct of Garcia and the MRGCD indicates an offer of employment, acceptance, and consideration. That is, Garcia was offered and he accepted employment with the MRGCD in 1975, and was offered and he accepted the position of Division Manager in 1976. In each instance, he proceeded to carry out the specific tasks required of him in service of the MRGCD, and the MRGCD compensated him accordingly.

■ 10. Nevertheless, in New Mexico an employment contract is for an indefinite period and is terminable at the will of either party unless there is a contract stating otherwise. *Hartbarger,* 115 N.M. at 668, 857 P.2d at 779. New Mexico recognizes two exceptions to this general rule, however: "wrongful discharge in violation of public policy (retaliatory discharge), and an implied contract term that restricts the employer's power to discharge." *Id.* Whether an implied employment contract exists is a question of fact, and it may be "found in written representations such as *an employee handbook,* in oral representations, in the conduct of the parties, or in a combination of representations and conduct." *Id.* at 669, 857 P.2d at 780 (emphasis added); *see also Newberry v. Allied Stores, Inc.,* 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989) (stating that implied contract is agreement in which parties by course of conduct have shown intention to be bound by agreement).

■ 11. We have held that an employee handbook may constitute an implied employment contract. *Forrester v. Parker,* 93 N.M. 781, 782, 606 P.2d 191, 192 (1980) (holding that personnel policy guide controlled employee-employer relationship and, therefore, constituted implied employment contract).

We have also recognized that not all personnel manuals may give rise to an implied employment contract. *Lukoski v. Sandia Indian Management Co.,* 106 N.M. 664, 666, 748 P.2d 507, 509 (1988) (stating that not all personnel manuals will become part of employment contracts (quoting *Leikvold v. Valley View Community Hosp.,* 141 Ariz. 544, 548, 688 P.2d 170, 174 (1984) (en banc))). In New Mexico, "a personnel manual gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlines." *Newberry,* 108 N.M. at 427, 773 P.2d at 1234 (citing *Forrester,* 93 N.M. at 782, 606 P.2d at 192).

12. The MRGCD's Personnel Policy contains provisions relating to most every aspect of an employment relationship, including job description, compensation (including salary on promotion, demotion, or transfer), overtime, compensatory time, time clock violations, tardiness, sick leave and annual leave, and holidays. Significantly, Section 502 of the MRGCD's Personnel Policy provides,

> An employee may be demoted or reclassified to another position and pay for which he is qualified, or have his pay in the same position reduced (a) when he would otherwise be terminated; or (b) when he does not possess the necessary qualifications to render satisfactory service in the position he holds, or is recommended for separation during probation; or (c) when he voluntarily requests such demotion or reclassification.

Additionally, the Personnel Policy includes an "Administrative Remedies" section applicable when personnel actions result in suspension, termination, or demotion. The Personnel Policy is specific so that employees may reasonably rely on its provisions and may expect that the MRGCD will conform as well.

13. Although we recognize that a personnel policy may evidence an implied employment contract, we maintain:

> Employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract.... [However,] if an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it. Having announced a policy, the employer may not treat it as illusory.

*Lukoski,* 106 N.M. at 666–67, 748 P.2d at 509–10 (quoting *Leikvold,* 141 Ariz. at 548, 688 P.2d at 174). Thus, we hold that the Personnel Policy is part of MRGCD's and Garcia's implied employment contract.

## C.

14. Next, we address whether Section 37–1–23(A), which waives governmental immunity in cases involving valid written contracts, incorporates an implied employment contract that includes written terms as set forth in a personnel policy. We hold that it does.

15. The MRGCD contends that because the employment contract can only be implied, it cannot be said to be "written," as required by Section 37–1–23(A) to waive sovereign immunity. We disagree. As we have discussed above, an employment contract may be implied in fact[1] from a term exhibited in writing in, for example, a personnel policy manual. *See, e.g., Hartbarger,* 115 N.M. at 670, 857 P.2d at 781 (noting that in *Forrester,* 93 N.M. at 782, 606 P.2d at 192, implied employment contract included term in personnel policy guide by which employer gave up right to discharge at will).

16. This waiver of sovereign immunity in cases involving valid written contracts has

---

1. A contract implied in fact is distinguished from a contract implied in law. Implied-in-fact contracts are "based on parties' mutual assent as manifested by their conduct." *Hydro Conduit,* 110 N.M. at 179, 793 P.2d at 861. Implied-in-law contracts, often called quasi-contracts, "are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." *Id.* (quoting Restatement of Contracts § 5 cmt. a (1932)).

the practical effect of encouraging parties who contract with governmental entities to do so in writing. We recognize at least two legitimate policy reasons for encouraging written contracts. The first reason stems from the fact that governmental entities enter into more contracts than many entities in the private sector. *Sena Sch. Bus Co. v. Board of Educ.*, 101 N.M. 26, 29, 677 P.2d 639, 642 (Ct.App.1984) (discussing reasonableness of two-year statute of limitations under Section 37–1–23(B) for equal protection analysis). The volume of public contracts is such that unless they are put to writing, the terms as to any one would likely be long forgotten in the event a dispute arose. *Id.*

■■■ 17. The second reason stems from the fact that governmental entities cannot enter contracts that would either curtail their authority or otherwise fall outside of their designated powers. *Cf. Spray v. City of Albuquerque*, 94 N.M. 199, 201, 608 P.2d 511, 513 (1980) ("There is a distinction ... 'between contracts which merely involve the propriety or business functions of the municipality and those which attempt to curtail or prohibit its legislative or administrative authority. The former [are] valid, the latter are uniformly invalid.'" (quoting *Wills v. City of Los Angeles*, 209 Cal. 448, 287 P. 962, 964 (1930)). It follows that unless a governmental entity is authorized to enter into a contract, the contract cannot be enforced as

against that entity. If parties evidenced their agreement in writing, courts may more easily determine whether the agreement is a "valid" contract worthy of enforcement.[2]

18. This point is aptly illustrated in *Trujillo v. Gonzales*, 106 N.M. 620, 621, 747 P.2d 915, 916 (1987), in which Trujillo, a Taos County employee, alleged he accepted employment with the County based on an oral promise by a county commissioner that his employment was for a two-year period. The county commission, however, hired him to be an "exempt," at-will, employee. When the County terminated his employment before two years expired, Trujillo sued, alleging breach of contract. *Id.* The County contended that the suit was foreclosed by Section 37–1–23(A), because the underlying agreement was an illegal or unauthorized action. *Id.* On appeal, this Court held that the County's authority to contract is limited and does not allow a commissioner to make oral promises such as the one Trujillo was attempting to enforce. *Id.* at 621–22, 747 P.2d at 916–17. "[A] contract unlawfully entered into, though in good faith, creates no liability on the part of the body politic to pay for it...." *Id.* at 622, 747 P.2d at 917. Accordingly, the Court held the County was immune because Trujillo could allege no valid written contract. *See id.*

19. The MRGCD has provided neither a legal nor a practical basis on which to except

**2.** Our attention is drawn to *Zamora v. Village of Ruidoso Downs*, 120 N.M. 778, 907 P.2d 182 (1995), as dispositive authority for holding that a personnel policy guide is a valid written contract for purposes of Section 37–1–23(A). Although in *Zamora* we did not address the issue, it would appear at first blush that by remanding Mr. Zamora's claim for breach of contract to the district court for further proceedings, we recognized a waiver of sovereign immunity. *Zamora* is inapposite to the instant case.

Although Section 37–1–23(A) applies to "governmental entities," and the Village of Ruidoso Downs can certainly be considered a governmental entity, Section 37–1–23(A), nevertheless, does not apply. A plain reading of the subsequent statute, Section 37–1–24, provides:

> No suit, action or proceeding at law or equity, for the recovery of judgment upon, or the enforcement or collection of any sum of money claimed due from any *city, town or village* in this state ... arising out of or

> founded upon any ... *contract written or unwritten* ... shall be commenced except within three years....

(Emphasis added). Hence, Section 37–1–24 allows suits against a city, town, or village based on contract, including suits based on *unwritten* contracts. The only requirement is that the suit be brought within the defined statutory period. As we have already recognized in *Spray v. City of Albuquerque*, 94 N.M. 199, 201–02, 608 P.2d 511, 513–14 (1980), this provision conflicts with Section 37–1–23(A) with respect to suits involving cities, towns, and villages. We presume the Legislature intended to exclude cities, towns, and villages from its designation of "governmental entities" in Section 37–1–23(A). *Id.* at 202, 608 P.2d at 514. Accordingly, any proposed application of *Zamora* as authority for waiving sovereign immunity in a suit based on contract against a city, town, or village would be misplaced. *Id.* (stating that when conflict exists between statutes relating to same subject, we interpret them so all statutes are operative).

the implied employment contract in the case at bar from "valid written contract" as provided in Section 37–1–23(A). Thus, we hold that "valid written contract" incorporates the implied employment contract between the MRGCD and Garcia.

### III.

20. We conclude that the Personnel Policy comprehensively controls the employer-employee relationship in the MRGCD and that it creates a reasonable expectation for MRGCD employees that the MRGCD will follow the provisions contained within the Personnel Policy. Thus, we hold that the Personnel Policy constitutes an implied employment contract. Additionally, we recognize the legitimate policy goals in waiving governmental immunity in cases involving valid written contracts. On the facts of this case, and in view of the legitimate policy goals outlined above, we hold that this implied employment contract, which includes a written personnel policy, constitutes a "valid written contract" required to waive governmental immunity under Section 37–1–23(A).

21. Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

22. **IT IS SO ORDERED.**

FROST, C.J., and RANSOM, J., concur.