FILED
United States Court of Appeals
Tenth Circuit

March 6, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

FISHER SAND & GRAVEL, CO., d/b/a
Southwest Asphalt Paving; FISHER
SAND & GRAVEL - NEW MEXICO,
INC.,

      Plaintiffs - Appellees,

v.

GARY GIRÓN, individually and as
former Cabinet Secretary of the New
Mexico Department of Transportation;
MAX VALERIO, individually and as
former Deputy Secretary of the New
Mexico Department of Transportation,

      Defendants - Appellants,

and

FNF CONSTRUCTION, INC.; PULICE
CONSTRUCTION, INC.; JED
BILLINGS, Chief Executive Officer of
FNF Construction, Inc.; STEPHEN
BASILA, President of Pulice
Construction, Inc.

      Defendants.

No. 11-2067
(D.C. No. 1:10-CV-00635-RB-SMV)
(D. N. Mex.)

## ORDER AND JUDGMENT[*]

Before **BRISCOE,** Chief Judge**, GORSUCH,** and **MATHESON,** Circuit Judges.

**MATHESON**, Circuit Judge.

Fisher Sand & Gravel-New Mexico ("FSG-NM") submitted a bid to the New Mexico Department of Transportation ("NMDOT") for a contract on the Las Cruces Highway Construction Project (the "Project" or the "Project Contract"). Although FSG-NM was the low bidder, NMDOT rejected all bids and eventually awarded the Project Contract to another company. Plaintiffs-Appellees Fisher Sand & Gravel, Co. and FSG-NM (collectively, "FSG") sued Defendants-Appellants Gary Girón and Max Valerio, secretary and deputy secretary of NMDOT respectively, and other defendants not involved in this appeal.

Among other things, FSG alleged under 42 U.S.C. § 1983 that Mr. Girón and Mr. Valerio violated its right to procedural due process when NMDOT refused to award the Project Contract to FSG-NM. Mr. Girón and Mr. Valerio moved to dismiss this claim based on qualified immunity and insufficient notice pleading under Fed. R. Civ. P. 8(a).

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The district court denied their motion.  Exercising jurisdiction under 28 U.S.C. § 1291,

we reverse and remand with directions to dismiss the §1983 claim brought against Mr.

Girón and Mr. Valerio.  We also deny FSG's motion to dismiss this appeal for lack of

jurisdiction.

## I.    BACKGROUND

### A. *Factual Background*[1]

On May 1, 2009, NMDOT advertised the Project and issued Invitations for Bid.

*See* NMDOT, Standard Specifications for Highway and Bridge Construction ("NMDOT

Sp."), § 102.1.  NMDOT opened the bids on May 29, 2009, and determined that FSG-

NM was the apparent lowest bidder.  *See* NMDOT Sp. § 102.15.  On June 18, 2009,

NMDOT recommended to the Federal Highway Association ("FHWA") that the Project

Contract should be awarded to FSG-NM.[2]  FHWA responded on June 22, 2009,

informing NMDOT that it would not be able to give final approval for at least 14 days.

Under NMDOT Sp. § 103.2, NMDOT must award a contract to the lowest

responsible bidder within 30 days after it opens the bids, unless it requests additional time

from the bidder.  On June 22, 2009, NMDOT contacted FSG-NM and requested

---

[1]Our review of a motion to dismiss takes its facts from the complaint.  *Cnty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002) ("In deciding a Rule 12(b)(6) motion, a federal court may only consider facts alleged within the complaint.").

[2]NMDOT needed approval from FHWA because funding for the Project came from federal funds granted by the American Recovery and Reinvestment Act of 2009.

additional time to award the Project Contract.

Around this time, the second-lowest bidder—FNF Construction ("FNF")—began making disparaging comments about FSG-NM to induce NMDOT to award the Project Contract to FNF. This strategy proved successful. NMDOT changed course and decided to award the Project Contract to FNF. On July 10, 2009, NMDOT recommended to FHWA that the Project Contract be awarded to FNF rather than FSG-NM. FHWA responded on July 13, 2009, and refused to award the contract to FNF because FSG-NM was the lowest bidder.

In response, NMDOT announced on July 28, 2009, that it was "reject[ing] all of the bids for the Project under [NMDOT Sp. §] 103.1 . . . as not promoting the best interests of the public." Compl. ¶ 115 (quotations omitted). Three days later, NMDOT readvertised the Project and accepted new bids. On November 25, 2009, NMDOT awarded the Project Contract to the lowest responsible bidder, which was neither FSG-NM nor FNF.

### B. *Procedural Background*

FSG filed a complaint against numerous defendants, including Mr. Girón, Mr. Valerio, and FNF. FSG brought 10 claims, most of which involved an alleged conspiracy among FNF, another construction company, and members of NMDOT to prevent FSG-NM from being awarded the Project Contract. FSG also sued Mr. Girón and Mr. Valerio under 42 U.S.C § 1983, alleging that they violated its procedural and substantive due process rights by not awarding the Project Contract to FSG-NM after the original bid

-4-

process.

Mr. Girón and Mr. Valerio filed a motion to dismiss the § 1983 claim based on qualified immunity and improper notice pleading under Fed. R. Civ. P. 8(a). The district court granted their motion to dismiss in part and denied it in part. It dismissed without prejudice FSG's claim against Mr. Girón and Mr. Valerio in their official capacities. It also granted their motion to dismiss FSG's substantive due process claim based on qualified immunity.

The district court denied Mr. Girón and Mr. Valerio's motion to dismiss FSG's procedural due process claim based on qualified immunity. It found that FSG had alleged sufficient facts to support a plausible claim that FSG-NM and NMDOT reached a "mutually explicit understanding," or an "implied contract," that NMDOT would award the Project Contract to FSG-NM. *See* Appx. at 175, 173 ("It would have been helpful if [FSG] had included more specific allegations in the Complaint; nonetheless, [FSG's] allegations are sufficient, if only barely, to survive a Rule 12(b)(6) motion to dismiss."). It further held that this "mutually explicit understanding" or "implied contract" was a clearly established constitutionally protected property interest. The district court also denied Mr. Girón and Mr. Valerio's motion to dismiss this claim based on insufficient notice pleading under Fed. R. Civ. P. 8(a).

Mr. Girón and Mr. Valerio now appeal the district court's denial of their motion to dismiss FSG's procedural due process claim based on qualified immunity and its refusal to dismiss this claim for insufficient notice pleading.

-5-

## II.    DISCUSSION

### A. *Qualified Immunity*

#### 1. *Jurisdiction*

Under 28 U.S.C. § 1291, we "have jurisdiction of appeals from all final decisions of the district courts" of this circuit.  Based on this final judgment rule, "interlocutory appeals . . . are the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995). Under the collateral order doctrine exception, an interlocutory order may qualify as a "final decision[]" under 28 U.S.C. § 1291 even though it is not "the last order possible to be made in a case." *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985); *see also Johnson*, 515 U.S. at 310.

The collateral order doctrine permits a party to appeal a district court's interlocutory ruling that "fall[s] in [the] small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

"[T]he applicability of [the collateral order] doctrine in the context of qualified-immunity claims is well established . . . ." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1946 (2009).  The doctrine applies to denials of qualified immunity because qualified immunity "is an *immunity from suit* rather than a mere defense to liability . . . [and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at

526; *see also Iqbal*, 129 S. Ct. at 1945-46 ("[Q]ualified immunity . . . is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation." (quotations omitted)).

The collateral order doctrine applies only when qualified immunity turns on a purely legal issue. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011) ("[A] district court's denial of a claim of qualified immunity, *to the extent that it turns on an issue of law*, is an appealable final decision within the meaning of 28 U.S.C. § 1291." (emphasis added) (quotations omitted)); *Gann v. Cline*, 519 F.3d 1090, 1091 (10th Cir. 2008) ("Our jurisdiction arises under 28 U.S.C. § 1291 and the collateral order doctrine allowing an interlocutory appeal from the denial of qualified immunity *that rests upon purely legal grounds*." (emphasis added)). A motion to dismiss based on qualified immunity requires a legal determination. In *Iqbal*, the Supreme Court explained that "[e]valuating the sufficiency of a complaint is not a 'fact-based' question of law" and the collateral order doctrine applies to the denial of a motion to dismiss for qualified immunity, including when qualified immunity turns on whether the "complaint sufficiently alleges a clearly established violation of law." 129 S. Ct. at 1947.

After Mr. Girón and Mr. Valerio filed their notice of appeal, FSG moved to dismiss the appeal for lack of jurisdiction. FSG argues that the district court's order denying Mr. Girón and Mr. Valerio's claim for qualified immunity turns on factual rather than legal matters and is thus unreviewable. We disagree. The district court's order was a Fed. R. Civ. P. 12(b)(6) determination of the *legal sufficiency* of the complaint

regarding qualified immunity. Mr. Girón and Mr. Valerio assume for the purposes of this appeal that FSG has alleged sufficient facts to support a "mutually explicit understanding" or "implied contract" that NMDOT would award the Project Contract to FSG-NM. They challenge whether FSG-NM could have a due process property interest in receiving the Project Contract based on an implied contract with NMDOT—a purely legal question. Under *Iqbal*, we have jurisdiction over the qualified immunity issue.

### 2. *Standard of Review*

"We review the district court's denial of a motion to dismiss based on qualified immunity de novo." *Brown*, 662 F.3d at 1162 (quotations omitted). "In reviewing a motion to dismiss, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Id.* (quotations omitted).

"[T]o withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'[O]nly a complaint that states a plausible claim for relief [will] survive[] a motion to dismiss.'" *Id.* (quoting *Iqbal*, 129 S. Ct. 1950).

### 3. *Legal Background*

#### a. *The Qualified Immunity Framework*

Title 42 U.S.C. § 1983 provides in part that "[e]very person who, under color of any statute, ordinance, [or] regulation . . . subjects . . . any citizen of the United States . . .

-8-

to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." *See also Camreta v. Greene*, 131 S. Ct. 2020, 2027 (2011) ("[Section 1983] authorizes suits against state officials for violations of constitutional rights.").

"[T]o ensure that fear of liability will not unduly inhibit officials in the discharge of their duties, the officials may claim qualified immunity . . . ." *Camreta*, 131 S. Ct. at 2030-31 (citation omitted) (quotations omitted). Qualified immunity applies only when government defendants are sued in their individual capacities. *Brown*, 662 F.3d at 1164. Under this principle, "government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quotations omitted). "Qualified immunity protects defendants not only from liability but also from suit." *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996).

We employ a two-part test to evaluate a qualified immunity defense. "In resolving a motion to dismiss based on qualified immunity, a court must consider [1] 'whether the facts that a plaintiff has alleged make out a violation of a constitutional right,' and [2] 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The burden is on the plaintiff to prove both parts of this test. *See Dodds v. Richardson*, 614 F.3d 1185, 1191

(10th Cir. 2010).  "If the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity."  *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted).

We have discretion to "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.  And "[i]f the court concludes no constitutional right has been violated, no further inquiry is necessary and the defendant is entitled to qualified immunity."  *Hesse*, 541 F.3d at 1244 (quotations omitted).

### b.      *Procedural Due Process*

Mr. Girón and Mr. Valerio challenge the district court's denial of their motion to dismiss FSG's procedural due process claim based on qualified immunity.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (quotations omitted).  "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972).

We engage in a two-step assessment of a procedural due process property claim: "(1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."  *Brown*, 662 F.3d at 1167 (quotations omitted).  "[I]t is only after the plaintiff

-10-

first demonstrates the existence and deprivation of a protected property interest that the plaintiff is constitutionally entitled to an appropriate level of process." *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007).

In the procedural due process context, "[p]roperty interests . . . are not created by the Constitution [but] [r]ather . . . by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577. "Thus, constitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials." *Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J*, 464 F.3d 1182, 1190 (10th Cir. 2006). "Valid contracts may constitute a property interest for purposes of due process." *S. Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1265 (10th Cir. 1998).

### 4. *Application*

The threshold issue is whether New Mexico law recognizes a property interest in an implied contract with a governmental agency. Based on N.M. Stat. Ann. § 37-1-23(A), Mr. Girón and Mr. Valerio say the answer is no.

### a. *Forfeiture Issue*

FSG argues that we should not consider N.M. Stat. Ann. § 37-1-23(A)'s effect on the existence of a due process property interest because Mr. Girón and Mr. Valerio did not raise this argument in the district court. Legal theories raised for the first time on appeal are either waived or forfeited. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011). If the theory is waived, meaning the party intentionally relinquished

-11-

or abandoned it in the district court, we refuse to consider it. *Id.* at 1127. If it is forfeited, meaning a party's failure to raise it was unintentional, we may consider it under a plain error standard of review. *Id.* at 1128.

Mr. Girón and Mr. Valerio did not waive their argument. On the motion to dismiss the procedural due process claim, neither party argued the implied contract theory on which the district court based its decision that FSG-NM possessed a property interest. In its response to Mr. Girón and Mr. Valerio's motion to dismiss, FSG argued that its property interest was based on NMDOT's implied obligation to follow its own policies and procedures. The district court rejected this argument. Appx. at 173. ("Plaintiffs confuse the issue of an implied contract by conflating the two distinct types of implied contracts—the one giving rise to a constitutionally protected property right and potential § 1983 claim and the other providing the disappointed bidder with nothing more than a state cause of action for its costs in preparing the bid." (citations omitted)). Although FSG referred briefly to an implied understanding that NMDOT would award the Project Contract to FSG-NM, it did not develop this argument.

Because the district court based its qualified immunity conclusion on a theory that neither party developed in the district court, we find it difficult to fault Mr. Girón and Mr. Valerio for not addressing a theory that first emerged in the district court's decision. On appeal, they challenge that decision because N.M. Stat. Ann. § 37-1-23(A) precludes a property interest based on an implied contract with a governmental entity. They did not intentionally relinquish or abandon this argument in district court and therefore did not

-12-

waive it.

As for whether Mr. Girón and Mr. Valerio forfeited their argument, we need not

decide that issue because, as explained below, they prevail even under plain error review.

"[W]e will reverse a district court's judgment on the basis of a forfeited theory only if

failing to do so would entrench a plainly erroneous result." *Richison*, 634 F.3d at 1128.

To satisfy this standard, "a party must establish the presence of (1) error, (2) that is plain,

which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity,

or public reputation of judicial proceedings." *Id.*[3]

---

[3]In *Richison*, we faulted the appellant for not attempting to show on appeal how his forfeited legal theory satisfied the plain error standard. 634 F.3d at 1130-31 ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court."). Here, Mr. Girón and Mr. Valerio argue that we should consider their argument not only because it is a purely legal one but also because "failure to consider it would result in a miscarriage of justice." Aplt. Reply Br. at 6. They further argue that the district court, once it elected to rely on an implied contract theory, failed to undertake a proper review of state law, leading to a clearly improper result. *See* Aplt. Br. at 9-10, 12-13 ("[U]nder New Mexico law, it is clear that [FSG] could not enforce an implied contract against NMDOT because state entities are immune from claims based on implied contract.").

In *Richison*, we explained the history and rationale behind applying plain error review to forfeited arguments:

> Long ago, this court held that we will reverse on the basis of a legal theory not previously presented to the district court *when the correct resolution of that theory is beyond a reasonable doubt and the failure to intervene would result in a miscarriage of justice.* More recently, we have stated this standard in slightly different terms, requiring a litigant to show the four elements of plain error. *Linguistic packaging aside, the substantive analysis under either articulation of the standard is similar, and the litigant's burden is the same: establishing a clear legal error that*

Continued . . .

-13-

### b. *Plain Error Analysis*

Mr. Girón and Mr. Valerio's argument that N.M. Stat. Ann. § 37-1-23(A) precludes a property interest based on an implied contract with a governmental entity warrants reversal of the district court's judgment under plain error review.

### i. *Error*

The district court erred by concluding that FSG-NM's implied contract with NMDOT created a due process property interest.

Although due process property interests may arise out of express or implied contracts, *Pater v. City of Casper*, 646 F.3d 1290, 1294 (10th Cir. 2011), such property interests arise only out of *enforceable* agreements, *see Kirkland*, 464 F.3d at 1190-91 ("Because the resignation agreement . . . never became an *enforceable* contract, Kirkland never gained a property interest in that agreement such that it would be subject to due

---

Cont.

> *implicates a miscarriage of justice.*

*Id.* at 1128 (emphasis added) (citations omitted); *see also Jordan v. U.S. Dep't of Justice*, —F.3d—, 2011 WL 6739410, at *9 (10th Cir. 2011) ("When a matter is forfeited, we may review for plain error, but that review is limited to whether there was a clear legal error that implicates a miscarriage of justice." (quotations omitted)) .
      Because Mr. Girón and Mr. Valerio show there has been a "clear legal error that implicates a miscarriage of justice," we may review their argument under the plain error standard.

-14-

process protections." (emphasis added)); *see also Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486, 492 n.9 (5th Cir. 2005) ("With respect to property rights relating to contracts, our precedent is clear that there must be an *enforceable* contract between the parties." (emphasis added)); *Drake v. Scott*, 823 F.2d 239, 242 (8th Cir. 1987) ("[Under Arkansas law], [t]he promise must be express, or else there is no *enforceable* contract, and, hence, no property right for purposes of the Due Process Clause." (emphasis added)).  In *Kirkland*, we held that a plaintiff did not have a property interest in an agreement because that agreement was not enforceable under state law.  464 F.3d at 1190-91.  In that case, the agreement required approval from the school board before it became binding.  *Id.* at 1190.  Because the school board never gave such approval, there was never an enforceable agreement, and therefore no due process property interest.  *Id.* at 1190-91.  We held that the individual defendants were entitled to qualified immunity on the procedural due process claim.  *Id.* at 1191.

FSG must have an enforceable agreement with NMDOT to have a due process property interest.  N.M. Stat. Ann. § 37-1-23(A) states:  "Governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."  Thus, for a contract with a governmental entity to be enforceable, it must be based on a "valid written contract."[4]  *See Eaton, Martinez & Hart, P.C. v. Univ. of N.M.*

---

[4]In *Garcia v. Middle Rio Grande Conservancy District*, 918 P.2d 7 (N.M. 1996), the New Mexico Supreme Court held that N.M. Stat. Ann. § 37-1-23(A) did not foreclose a suit against a governmental agency arising from an implied employment contract based

Continued . . .

*Hosp.*, 934 P.2d 270, 272 (N.M. 1997) ("The Legislature has imposed a statutory

requirement that a contract claim must be supported by a writing in order for it to be

enforceable against the State.").

Other circuits have refused to find a property interest based on a contract that is

unenforceable under state law.[5] *See Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 437

(5th Cir. 2001) (holding there was no property interest based on an "implied contract

because a contract that fails the statute of frauds cannot be enforced as such a contract

---

Cont.

on an employee handbook. *Id.* at 11-13. The employee handbook provided the "valid
written contract" required by N.M. Stat. Ann. § 37-1-23(A). *Id.* at 12-13. New Mexico
courts, however, have not extended this exception beyond the employment context. *See
Campos de Suenos, Ltd. v. Cnty. of Bernalillo*, 28 P.3d 1104, 1111-12 (N.M. Ct. App.
2001); *see also Whittington v. State Dep't of Pub. Safety*, 100 P.3d 209, 214-15 (N.M. Ct.
App. 2004) (explaining that *Campos de Suenos* limited *Garcia* to the employment
context).

[5]In *Luttrell v. Montoya*, No. 94-2189, 1995 WL 350601 (10th Cir. June 12, 1995)
(unpublished) (cited for persuasive value pursuant to 10th Cir. R. 32.1(A)), we held that,
based on N.M. Stat. Ann. § 37-1-23(A), an employee did not have a property interest in
continued employment because he did not have a written contract for employment. *Id.* at
*2. Because the "plaintiff had no enforceable contract right to employment under state
law, he had no legitimate claim of entitlement to employment" and no property interest
under state law. *Id.* (quotations omitted). Therefore, we held that the plaintiff had not
asserted the violation of a constitutional right, and the defendants were entitled to
summary judgment based on qualified immunity. *Id.* at *3.
       *Luttrell* is distinguishable from *Garcia*. Unlike *Garcia*, there is no indication in
*Luttrell* that there was an employee handbook or any writing that the plaintiff could claim
to support his implied contract. *See id.* at *1 ("Plaintiff maintains . . . that he had an
implied contract of continued employment, based on representations made to him . . .
[and] that the school district treated him as an employee while he was on leave of absence
by continuing his benefits . . . .").

-16-

under Texas law"); *Woolsey v. Hunt*, 932 F.2d 555, 564-65 (6th Cir. 1991) ("We are compelled to reverse because Tennessee does not recognize the enforcement of an implied contract against the state and has not done so since 1980. . . . Tennessee had waived its sovereign immunity only with respect to suits against the state based on an express contract or breach thereof.").

FSG-NM's interest in the Project Contract was not based on a written agreement. It was based on an implied contract with NMDOT that arose from a mutual understanding that NMDOT would award the Project Contract to FSG-NM. Because there was no "valid written contract," this mutual understanding was not enforceable. S*ee* N.M. Stat. Ann. § 37-1-23(A).

N.M. Stat. Ann. § 37-1-23(A) grants immunity to governmental *entities*. FSG brings this claim against Mr. Girón and Mr. Valerio in their *individual* capacities, but this does not alter our conclusion.[6] The statute determines whether FSG-NM had a property interest in the Project Contract based on an implied contract with NMDOT. Without such an interest, FSG-NM had no due process right that the individual defendants could violate.

Moreover, FSG does not allege that it had an implied contract with Mr. Girón or

---

[6]In *Luttrell*, the plaintiff brought a § 1983 claim against the defendants in their individual capacities. Based on N.M. Stat. Ann. § 37-1-23(A), we said "it [was] clear that plaintiff could not enforce an implied contract against the *school district*." 1995 WL 350601, at *2 (emphasis added). We held that the individual defendants were entitled to qualified immunity. *Id.* at *3.

Mr. Valerio. Instead, it alleges only that Mr. Girón and Mr. Valerio violated its constitutional rights when they determined not to award the Project to FSG-NM. *See* Compl. ¶¶ 239-254. Even if Mr. Girón and Mr. Valerio had made representations creating a "mutual, explicit, understanding that [FSG-NM's] bid had been accepted . . . and [FSG-NM] would be awarded the contract . . . ," Appx. at 173, this understanding would at most be an implied contract between FSG-NM and NMDOT, not between FSG-NM and Mr. Girón or Mr. Valerio. And, to repeat, such an implied contract is unenforceable under New Mexico law.

Because FSG-NM did not have a protected property interest in the Project Contract, there could be no deprivation of due process. The district court erred by denying Mr. Girón and Mr. Valerio qualified immunity on FSG's due process claim.

### ii.     *Plain*

"An error is 'plain' if it is clear or obvious under current, well-settled law." *United States v. Weeks*, 653 F.3d 1188, 1198 (10th Cir. 2011). "In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *United States v. Thornburgh*, 645 F.3d 1197, 1208 (10th Cir. 2011), *cert. denied*, 132 S. Ct. 214 (2011) (quotations omitted). "The absence of such precedent will not, however, prevent a finding of plain error if the district court's interpretation was clearly erroneous." *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003) (quotations omitted).

Although we have no published case on point, our reasoning in *Luttrell*, as well as

-18-

the New Mexico cases cited above, clearly establish that N.M. Stat. Ann. § 37-1-23(A) prevents a party from entering into an enforceable contract with a governmental entity unless that contract is in writing. We conclude that the district court's analysis was clearly erroneous in holding that FSG-NM had a property interest in an implied contract with NMDOT.

### iii. *Affecting Substantial Rights*

"To satisfy the third prong of plain error review, the appellant must show a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Cordery*, 656 F.3d 1103, 1108 (10th Cir. 2011) (quotations omitted). This requirement is easily satisfied in this case. If the district court had properly considered the effect of N.M. Stat. Ann. § 37-1-23(A), it would have granted Mr. Girón and Mr. Valerio's motion to dismiss for qualified immunity. Thus, the district court's error affected Mr. Girón's and Mr. Valerio's substantial rights.

### iv. *Seriously Affecting the Fairness, Integrity, or Public Reputation of Judicial Proceedings*

Failure to consider Mr. Girón and Mr. Valerio's argument and affirming the district court's denial of their motion to dismiss for qualified immunity would produce an outcome contrary to clearly established law. Permitting the district court's plainly erroneous ruling to stand would "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings," *Richison*, 634 F.3d at 1128, because N.M. Stat. Ann. § 37-1-23(A) requires that Mr. Girón and Mr. Valerio are entitled to qualified immunity.

*See Cordery*, 656 F.3d at 1108 (holding that the fourth element of plain error review was satisfied when the district court's error would result in a 10 percent longer sentence). We conclude that the fourth element of plain error is satisfied. Our conclusion comports with the principle that "qualified immunity . . . is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation," *Iqbal*, 129 S. Ct. at 1945-46 (quotations omitted), and the "importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (quotations omitted).

\* \* \*

For these reasons, the district court committed plain error by concluding that FSG-NM's implied contract with NMDOT was a property interest under the due process clause. Because FSG-NM did not have a protected property interest in the Project Contract, there could be no deprivation of due process. Mr. Girón and Mr. Valerio are therefore entitled to qualified immunity on FSG's procedural due process claim.

### B. *Sufficiency of the Pleadings Under Fed. R. Civ. P. 8(a)*

Mr. Girón and Mr. Valerio also argue that the district court erred in denying their motion to dismiss based on insufficient notice pleading under Fed. R. Civ. P. 8(a). Assuming we have jurisdiction over this issue, we need not decide it because we reverse the district court's denial of Mr. Girón and Mr. Valerio's qualified immunity defense.

### III. CONCLUSION

We deny FSG's motion to dismiss this appeal for lack of jurisdiction. We reverse the district court's judgment denying Mr. Girón and Mr. Valerio's motion to dismiss

FSG's procedural due process claim based on qualified immunity and remand with

directions to dismiss the §1983 claim brought against Mr. Girón and Mr. Valerio.


Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge